SZYMCZAK, D.B.A. TRUCKER LEAP TRUCKING, APPELLANT, *v.* MIDWEST PREMIUM FINANCE COMPANY ET AL., APPELLEES.

(No. 47531—Decided June 25, 1984.)

*Alan G. Sandler,* for appellant.
*Frank Osborne,* for appellee Midwest Premium Finance Co.
*Steven W. Albert,* for appellee Neale Phypers Co.
*Timothy T. Reid,* for appellee Buckeye Union Insurance Co.

ANN McMANAMON, J. Dennis Szymczak (plaintiff-appellant) appeals an adverse verdict in the Court of Common Pleas of Cuyahoga County on his claim for wrongful cancellation of insurance.

Szymczak originally brought suit against appellees Midwest Premium Finance Co. ("Midwest"), Neale Phypers Co. ("Phypers") and Buckeye Union Insurance Co. ("Buckeye"). At the close of appellees' case the court directed a verdict in favor of Midwest and the jury verdict was returned in favor of the remaining appellees. Appellant raises five assignments of error.[1]

I

The trial evidence disclosed that appellant purchased insurance on his 1968 Mack truck from Buckeye, through its agent, Phypers. The Phypers salesman's name was Les Stevens. The effective dates of coverage were September 15, 1975 to September 15, 1976. On October 30, 1975 appellant entered into a financial agreement with Midwest to provide for full premium payment to Buckeye. Midwest is a wholly owned subsidiary corporation of Phypers which is operated for the sole purpose of financing policies sold by Phypers.

The Midwest finance agreement required appellant to make a $350 down payment followed by six monthly installment payments of $169.44, commencing October 30, 1975. The agreement appointed Midwest as attorney in fact for appellant and authorized Midwest to cancel the policy in the event of default in the installment payments.

In November and December 1975 appellant received postcards from Midwest giving him ten days' notice of intent to cancel his policy for nonpayment of premium. These warning postcards were each followed by notices of cancellation transmitted by Phypers by reason of continued nonpayment of the monthly sums due Midwest. On each of these occasions appellant tendered a late payment upon receipt of the second notice and cancellation was rescinded.

Carolyn Heiman, appellant's ex-wife, testified that she took care of the books for her husband's small trucking business and wrote the Midwest payment checks. She related that because business was slow during the winter months the firm was short on cash and she withheld payments until receipt of the notices of cancellation. According to Mrs. Heiman, no notice of intent to cancel was received in January but a notice of cancellation, to be effective February 11, was delivered to the office in the Szymczak home. Upon receipt of this notice Mrs. Heiman telephoned Les Stevens and, as a result of their conversation, sent him a check on February 12, 1976. Thereafter, no more notices were sent by Midwest or Phypers. In April,

---

[1] Appellant's assignments of error are:

"I. Where from the evidence the jury can reach different conclusions on any issues of [f]act, it is error when the court removes such questions of fact from them in directing a verdict.

"II. In charging the jury when using words of legal or technical import, the trial court must explain such words or terms so the jury could not misconstrue them in applying the law to the facts as they find them to be from the evidence.

"III. It is error for the trial court to charge on an issue that was not presented by the evidence. Such error is compounded when the trial court makes the finding of such facts necessary in order for a party to sustain his case.

"IV. A statement offered against a party is not hearsay when made by the party's agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship.

"V. Where mandatory statutory requirements for cancellation of [an] insurance contract were not following [sic] in cancelling said contract, a directed verdict will lie in favor of the policy holder."

Mrs. Heiman testified she mailed a check to Phyphers in the amount of $250, payable to Les Stevens.

Appellant told the jury that on May 13, 1976 his truck was totalled in an accident. He reported the incident to Phypers and was informed that his insurance had been cancelled in February. On May 24, 1976 he received a $308.24 check[2] from Phypers which he did not cash. Appellant acknowledged that his former wife handled his bookkeeping and denied any knowledge that his policy had been cancelled.

Michael Zuber, the president of both Phypers and Midwest, testified that when Midwest wanted a policy cancelled they would ask Phypers to do it for them. He related that Phypers sent appellant a series of ten-day cancellation notices culminating with the final one dated January 29, 1976 to be effective February 11. Zuber, however, admitted that because of notice requirements mandated by the Ohio Public Utilities Commission, appellant's policy was actually not cancelled by Buckeye until March 22. He also admitted that appellant was charged a premium until that date.

Appellant had bought insurance through Les Stevens at Phypers for three or four years prior to the subject policy purchase in September 1975. Stevens wrote the policy at issue, directed appellant to Midwest and prepared the finance agreement. Stevens admitted at trial that he could recall a conversation with appellant's ex-wife concerning the cancellation but was unable to remember the substance of the conversation or the date it occurred.

Stevens admitted receipt of $250 from appellant in April, but testified that it represented payment for another policy.

## II

Appellant argues in his first assignment of error that the trial court erred in directing a verdict in favor of appellee Midwest. He contends that an issue of fact was presented as to whether Midwest had complied with the statutory notice requirements pertaining to insurance contracts set forth in R.C. 1321.81.[3]

While we agree that an issue of fact concerning proper notice was raised, under the circumstances presented at trial, appellant could not obtain a judgment against Midwest and, consequently, a directed verdict was properly entered in its favor.

There are two contractual relationships involved in the instant case. The first is an insurance contract between appellant and Buckeye. The second is a finance contract between appellant and Midwest. Conceivably appellant could have alleged a breach of both of these agreements, but he did not. The sole basis of his claim is wrongful cancellation of his insurance contract and the only question at issue is whether this insurance contract was in effect on the date of loss. Midwest is not a party to the insurance agreement between appellant and Buckeye.

Under the terms of the premium finance agreement, Midwest does have the authority to request a cancellation of appellant's policy. R.C. 1321.81 sets forth how notice of this cancellation must be provided. If, however, the cancellation is found to be defective, then the insurance contract will continue in effect and it is Buckeye, not Midwest, that will be liable to appellant for any losses sustained under the policy. See

---

[2] This check was a refund on the policy's unearned insurance premium.

[3] See Appendix. (Reporter's Note: The text of R.C. 1321.81, as contained in the Appendix, has been deleted from the reported opinion.)

*Home Mut. Ins. Co.* v. *Broadway Bank & Trust Co.* (1980), 76 A.D. 2d 24, 429 N.Y.Supp. 2d 948, affirmed (1981), 53 N.Y. 2d 568, 444 N.Y. Supp. 2d 436 (discussing liability of insurer for defective cancellation of policy by a premium finance company). See, also, *DeBose* v. *Travelers Ins. Co.* (1983), 6 Ohio St. 3d 65 (holding that in order to terminate an automobile insurance policy for nonpayment of premiums all statutory requirements must be complied with by the insurer).

Directing the verdict in Midwest's favor did not remove any of the factual issues concerning notice of cancellation from the jury's consideration. The burden remained on Buckeye to demonstrate that cancellation was effected by Midwest and ultimately by Buckeye, as required by R.C. 1321.81.

This assignment of error is without merit.

### III

Appellant's second assignment of error concerns the following charge by the court to the jury:

"If you find from the evidence that the Plaintiff had actual knowledge that the cancellation of the insurance policy was to be effective on February 11, 1976, then I am instructing you that as a matter of law the equitable doctrine of estoppel would prohibit the Plaintiff from now raising technical defects in any notices of cancellation. * * *"

Appellant posits error in the court's failure to explain or define for the jury the terms "equitable * * * estoppel" and "technical defects." He also argues that equitable estoppel was inapplicable as stated in the charge given.

Civ. R. 51(A) provides in part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

A review of the record indicates that the only objection to this charge raised by counsel at trial was "based on the fact that there is no definition given to the jury of what estoppel is, what constitutes estoppel." On that basis our consideration of this assignment will be strictly limited to the error specified. See *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207 [24 O.O.3d 316].

Upon proper request a general duty is imposed on the trial court to define technical and legal terms which have a meaning not generally understood by the average juror. The Ohio Supreme Court has held:

"Where from a view of the whole charge it is seen that the jury has been given a comprehensive and intelligent instruction concerning the issues and the meaning of technical terms used, the fact that a particular legal or technical word is also used in a portion of a special charge, or in the general charge, without such explanation or definition, should not be held to be erroneous." *Piqua* v. *Morris* (1918), 98 Ohio St. 42, at 52.

Clearly, "equitable estoppel" is a legal term which does not carry a generally understood meaning. Further, after a review of the court's complete charge, we find that the jury was inadequately informed on this issue. We note that, after jury deliberation had commenced, a request was made by the jury for further explanation of the "principle of estoppel." The court's only response was a repetition of its previous instruction.

Equitable estoppel was an affirmative defense claimed by the appellees. In the absence of interrogatories, the basis of the jury's verdict is not ascertainable. It is a real possibility that the verdict was based upon a mistaken interpretation of the undefined terms presented by the trial judge. The prej-

udicial effect of the court's failure to define equitable estoppel adequately upon timely request requires a reversal of the judgment.

To this extent, the appellant's second assignment of error is well-taken.

## IV

Appellant's third assignment of error concerns the following portion of the jury charge:

"It's claimed here that on February 12, 1976, the Plaintiff paid monies to the Defendants pursuant to the terms and conditions of a finance agreement from which an insurance policy had been issued. It is under dispute that payment thereof was beyond the time period specified in the finance agreement for payment. Therefore, the Plaintiff, in order to show said monies were applicable to said — for the insurance coverage, must prove the following:

"A. That the Defendants agreed that the time for payment should be extended for some definite ascertained or ascertainable time. And B, there must have been a new consideration for such agreement."

Appellant argues that this charge was erroneous because (1) he never claimed that defendants below agreed to revise or modify the existing agreement; (2) Buckeye and Phypers were not parties to the finance agreement and, therefore, should not have been included in the instruction; and (3) the charge limited his defenses by ignoring the issues of waiver and estoppel.

The record is devoid of any of these objections below, nor did appellant request an instruction on waiver and estoppel as applicable to appellees.

Appellant cannot now assign error in this allegedly improper instruction. See *Schade, supra*; Civ. R. 51(A).

## V

In his fourth assignment of error appellant cites the exclusion of Carolyn Heiman's testimony regarding her claimed conversation with Les Stevens concerning the late payment on February 12, 1976. Appellant proffered the following testimony on the record:

"He [Stevens] assured me [Heiman] if I would send in the premium that I — that Dennis [appellant] would not be cancelled. The policy would not be cancelled. That I told him I could not send it in by the 11th but would send it in as soon as I could and he said that would be all right.

"I then asked him the amount that I should send in and he said, and he checked and said $341.88."

Appellant contends that this testimony should have been admitted as a statement against interest made by a principal's agent or servant pursuant to Evid. R. 801(D)(2)(d).[4] He argues that the proffered material raises issues of waiver and estoppel on the part of Midwest in accepting late payment.

The appellees counter that the conversation was properly excluded because Les Stevens was not an agent for Midwest and, therefore, had no authority to extend the time for payment.

---

[4] Evid. R. 801 provides in part:

"(D) Statements which are not hearsay. A statement is not hearsay if:

"* * *

"(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."

We disagree. The uncontroverted evidence at trial demonstrates that appellant's entire contact with Midwest was through Les Stevens. Stevens directed appellant to Midwest; Stevens prepared the finance agreement; Stevens transmitted the contract to appellant for signature; and Stevens made all other arrangements necessary to complete the finance agreement. Michael Zuber, Midwest's president, confirmed that Stevens had full authority to solicit customers for Midwest, present finance agreements to customers and fill out the necessary finance applications on Midwest's behalf. All of this evidence was adduced prior to Carolyn Heiman's attempt to testify concerning the proffered conversation.

It has been held that:

"* * * [W]here a person, by acts or conduct, has caused or permitted another to appear to be his agent, he will be estopped to deny the agency with respect to third persons who deal with the apparent agent in good faith and in the exercise of reasonable prudence. See *Combs* v. *Kobacker Stores Inc.* (1953), 65 Ohio Law Abs. 326; *Murray* v. *Hills Cab Co.* (1963), 119 Ohio App. 211 [27 O.O.2d 62]; and *Rubbo* v. *The Hughes Provision Co.* (1941), 138 Ohio St. 178 [20 O.O. 233]." *Agosto* v. *Leisure World Travel, Inc.* (1973), 36 Ohio App. 2d 213, 216-217 [65 O.O. 339].

Under the principle of *Agosto,* even if Stevens were not an express agent of Midwest, it could still be found that Midwest caused or permitted it to appear to appellant that Stevens was an agent of Midwest.

In addition, the record indicates that Midwest is a wholly owned subsidiary of Phypers. The two corporations are composed of the same shareholders, directors, officers and occupy the same suite of offices. Midwest exclusively finances premiums on policies sold by Phypers. It also appears that Phypers' employees perform all the tasks necessary to conduct the daily business affairs of Midwest. These tasks include sending all cancellation notices on insurance policies sold by Phypers and financed through Midwest.

Under such circumstances it has been held that a premium finance company is not a separate entity but is in reality only an extension or branch of the insurance company on whose behalf it finances premiums. See *Farmers Ins. Group* v. *Progressive Cas. Ins. Co.* (1978), 84 Mich. App. 474, 269 N.W. 2d 647.

For purposes of considering this assignment of error we adopt the holding in *Farmers Ins. Group* and find that Midwest and Phypers are one and the same. It follows as a consequence that Phypers cannot disavow actions or statements allegedly made by Les Stevens by contending, in one instance, that he was acting solely on behalf of Phypers and, in another instance, solely in a clerical capacity on behalf of Midwest.

Under the general principles of agency the admissions or statements of an agent, assuming agency to have been established, are admissible against the principal when made within the scope of his authority with regard to the subject transaction. See *Kimbark* v. *Timken Roller Bearing Co.* (1926), 115 Ohio St. 161; *Goz* v. *Tenney* (1922), 104 Ohio St. 500; Evid. R. 801(D)(2).

We find that the testimony of Les Stevens should have been admitted at trial.

It has been long recognized that an agent may expressedly or impliedly waive and/or extend the time for premium payment unless there are restrictions upon his authority of which the insured has notice. *Machine Co.* v. *Ins. Co.* (1893), 50 Ohio St. 549, at paragraph four of the syllabus; *Natl. Mut. Ins. Co.* v. *London Tankage Works Co.* (App. 1932), 13 Ohio Law Abs. 252, 255.

The proffered testimony would have properly raised the issue of waiver against appellees' defense that the insurance policy was cancelled for late payment of premium. The exclusion of this testimony was prejudicial error.

This assignment of error is well-taken.

## VI

Appellant argues in his final assignment of error that he was entitled to a directed verdict because the trial evidence clearly demonstrates that Midwest failed to comply with the requirements of R.C. 1321.81(D) requiring notice to the insured's mortgagee.

The disposition of a motion for a directed verdict is governed by Civ. R. 50(A)(4). This rule provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

It is undisputed that Phypers sent the mortgagee's notice of cancellation to CIT Corporation.

At trial appellant contended that his mortgagee was National City Bank. Appellant argues that this mistake on Midwest's part mandates a directed verdict in his favor.

This assignment of error is not well-taken.

The notice requirement cited by appellant is not a determinative issue in this case. Statutory notice to a mortgagee is mandated to protect the interest of the mortgagee in the subject property and not to protect the insured. For this reason, failure to provide proper notice to a mortgagee would be a defense to cancellation available to that mortgagee and not to the insured.

Assuming, *arguendo*, that appellant's notice-deficiency argument had merit, it is sufficient to say that a factual issue was presented as to whether notice was given in compliance with this section. Les Stevens testified that appellant told him that the mortgagee on the vehicle was CIT Corporation. As a result of that representation the notice of cancellation was sent to CIT. Clearly, under this circumstance, a jury could find that any noncompliance with R.C. 1321.81 was the result of appellant's misinformation, rather than any lack of compliance by the insurer.

Appellant was not entitled to a directed verdict for any claimed failure to comply with R.C. 1321.81(D).

The judgment in favor of Midwest is affirmed.

For the reasons advanced in appellant's second and fourth assignments of error the judgments in favor of Phypers and Buckeye are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part, and cause*
*remanded.*

CORRIGAN, P.J., and PARRINO, J., concur.