STATE FARM FIRE AND CASUALTY COMPANY
*v.* Ola STOCKTON, Ira Stockton, and First
National Bank, Siloam Springs, Arkansas

88-66 750 S.W.2d 945

Supreme Court of Arkansas
Opinion delivered May 31, 1988

*Roy & Lambert*, by: *John D. Copeland*, for appellant.

*Elrod & Lee*, by: *Daniel R. Elrod*, for appellee First National Bank, Siloam Springs, Arkansas.

*Odom, Elliott & Martin*, by: *Don R. Elliott, Jr.*, for appellees Ola Stockton and Ira Stockton.

JACK HOLT, JR., Chief Justice. This case involves an issue of first impression in Arkansas: whether an insurer, when canceling an automobile liability policy, must notify both the insured and any bank or other lending institution having a lien on the named insured's automobile in order for cancellation to be effective with respect to the insured. Jurisdiction is pursuant to Ark. Sup. Ct. R.

29(1)(c).

On June 24, 1985, appellee Ola Stockton, through agent Ralph L. Reeves, purchased a liability and collision policy for her 1982 Dodge Colt from appellant State Farm Fire and Casualty Company ("State Farm"). The policy was to be effective from June 24, 1985, until December 24, 1985. Stockton paid one-half of the $215.26 premium, or $107.63, and received a policy. Appellee First National Bank of Siloam Springs, Arkansas ("First National Bank"), which financed the vehicle, was listed on the policy as loss payee.

Stockton received notice from State Farm that the balance of $107.63 was due on August 4, 1985. She did not make the payment. She then received a second notice requiring payment by September 24, 1985. Subsequently, Stockton received notice, dated September 10, 1985, that her policy would be cancelled as of September 24, if she did not make payment by that date. She did not make the payment.

On September 25, Ola Stockton's son Ira, while driving Ola's car, had a collision with a vehicle owned by Maxine Grammer. All parties agree that the car sustained total damages. On September 26, Ola Stockton tendered a check for $107.62 to her agent. State Farm reinstated the policy as of September 26 and issued Ola Stockton a refund check in the amount of $2.37 for the day (September 25) she was not covered by the policy.

On November 4, 1985, Ola and Ira Stockton filed a complaint in the Chancery Court of Washington County for a declaration that Ola Stockton was fully insured as of September 25, 1985. They also prayed for a declaration requiring State Farm to assume the defense to the claim of Maxine Grammer, to pay for the damage to her automobile, and to pay attorneys' fees.

Subsequently, First National Bank filed a complaint in intervention against Ola Stockton because she had defaulted on her promissory note executed in favor of the bank and against State Farm and Ralph Reeves because they refused to pay the sums owed to the bank, as loss payee, under the policy.

The case (except First National Bank's complaint in intervention against Stockton) was transferred to circuit court. The court found in its opinion letter and judgment that Ark. Code

Ann. § 23-89-304 (1987) [formerly Ark. Stat. Ann. § 66-4009 (Repl. 1980)] requires an insurance company to give written notice to both an insured and to any bank or lending institution having a lien on the named insured's automobile before cancellation of insurance is effective. The court held that even though State Farm gave notice to Ola Stockton, this action did not legally cancel the policy since State Farm did not notify First National Bank. In addition, the trial court entered a declaratory judgment requiring State Farm to assume the defense of the claim of Maxine Grammer on behalf of Ola Stockton and awarded First National Bank $1,348.40, which represented the actual cash value of the automobile at the time of the loss minus the salvage value and the deductible under the policy. Furthermore, the trial court held that Ralph Reeves had no liability and that Ira Stockton had no standing in the case.

On October 20, 1987, a second hearing was held to determine the attorneys' fees to be awarded. In an amended judgment, the trial court awarded Ola Stockton attorney's fees in the amount of $7,148.75.

From the judgment of the trial court, State Farm appeals. We affirm.

## DUAL NOTIFICATION REQUIREMENT

State Farm argues that the trial court erred in holding that written notice of cancellation given to Ola Stockton did not legally cancel her automobile liability policy. It asserts that Ark. Code Ann. § 23-89-304 (1987) does not require that notice be given to both an insured and to any bank or lending institution having a lien on the named insured's automobile in order for cancellation to be effective as to the insured. We disagree.

■ Section 23-89-304 provides in pertinent part as follows:

Time for notice of cancellation.

(a) *No notice of cancellation* of a policy to which § 23-89-303 applies, and no notice of cancellation of a policy which has been in effect less than sixty (60) days at the time notice of cancellation is mailed or delivered, *shall be effective unless mailed or delivered by the insurer to the named insured and to any bank, or other lending institu-*

*tion having a lien on the named insured's automobile* at least twenty (20) days prior to the effective date of cancellation, provided that where cancellation is for non-payment of premium, at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given. [Emphasis added.]

By the plain language of the statute, an insurance company must give notice of cancellation to both the insured and to any bank or other lending institution having a lien on the named insured's automobile for cancellation to be effective. Cancellation of the automobile liability insurance policy in this case was ineffective since State Farm, although it gave notice of cancellation to Ola Stockton, failed to notify First National Bank.

State Farm cites *Wisniewski* v. *State Farm General Ins. Co.*, 25 Wash. App. 766, 609 P.2d 456 (1980), and *Szymczak* v. *Midwest Premium Finance Co.*, 19 Ohio App. 3d 173, 483 N.E.2d 851 (1984), to support its position that where a statute provides that notice of cancellation must be given to both an insured and to a mortgagee, notice to the insured is effective as to the insured even if the insurer does not give notice to the mortgagee.

In *Wisniewski*, the relevant statute, Wash. Rev. Code § 48.18.290 (1976), provided in pertinent part as follows:

(1) Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be affected as to any interest only upon compliance with either or both of the following:

(a) Written notice of such cancellation must actually be delivered or mailed to the insured or his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except for cancellation of insurance policies for non-payment of premiums, which notice shall be not less than ten days prior to such date;

(b) Like notice must also be delivered or mailed to each mortgagee, pledgee, or other person shown by the policy to have an interest in any loss which may occur thereunder.

The Court of Appeals of Washington held that notice to the insured was effective to cancel the policy in question with respect to the insured even though notice was not given to the mortgagee. However, the Washington statute, even though it provided for dual notification, did not clearly state, as does Ark. Code Ann. § 23-89-304, that cancellation is ineffective unless an insurer gives notice to both an insured and to any bank or other lending institution having a lien on the named insured's automobile.

In *Szymczak, supra*, the court held that "failure to provide proper notice to a mortgagee would be a defense to cancellation available to that mortgagee and not to the insured." However, the relevant Ohio statute, Ohio Rev. Code Ann. § 1321.81 (Page 1979), like the Washington statute, did not plainly state that before cancellation is effective, notice must be given to an insured and a bank or other lending institution having a lien on a named insured automobile. Thus, we likewise do not consider it persuasive authority.

## REASONABLENESS OF ATTORNEYS' FEES

State Farm also argues the amount of the award of attorneys' fees was excessive. We disagree.

 In the event an insurer wrongfully refuses to pay benefits under an insurance policy, the insured may recover the overdue benefits, twelve percent (12%) damages upon the amount of the loss, and reasonable attorneys' fees. Ark. Code Ann. § 23-79-208 (1987) [formerly Ark. Stat. Ann. § 66-3238 (Repl. 1980)]. The computation of attorneys' fees is governed by such factors as the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. *See Southhall* v. *Farm Bureau Mutual Ins. Co. of Arkansas, Inc.*, 283 Ark. 335, 676 S.W.2d 228 (1984); *Equitable Life Assur.* v. *Rummel*, 257 Ark. 90, 514 S.W.2d 224 (1974). While courts should be guided by these recognized factors, there is no fixed formula in determining the

reasonableness of attorneys' fees. *Id.* Because of the trial judge's intimate acquaintance with the record and quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.* Accordingly, an award of attorneys' fees will not be set aside absent an abuse of discretion by the trial court. *Id.*

Don Elliott, Stockton's attorney, presented a detailed, itemized, fee statement to the trial court containing dates, description of services, specific hours spent (75.5), and hourly rate ($95.00). Three attorneys testified concerning Elliott's outstanding reputation and superior ability and the fee customarily charged in the locality for similar services—$100.00 per hour. Although the amount involved in the case was only $1,348.40, the issue of whether an insurance company, when cancelling a policy, must give notice to both an insured and to any bank or other lending institution having a lien on the named insured's automobile in order for cancellation to be effective with respect to the insured is novel.

The trial court awarded Stockton $7,148.75 in attorneys' fees for 75.5 hours spent by her attorney at $95.00 an hour, plus interest. Based upon the evidence presented at trial, we cannot say the trial court abused its discretion in the computation of attorneys' fees.

### RECOVERY BY THE LOSS PAYEE

State Farm asserts that the trial court erred in entering judgment in favor of loss payee First National Bank against State Farm since the bank has not repossessed the automobile as required by the language of the policy. The relevant policy provision provides as follows:

> If a creditor is shown in the declarations, we may pay any comprehensive or collision loss to:
>
> 1. you and, if unpaid, the repairer; or
>
> 2. you and such creditor, as its interest may appear, when we find it is not practical to repair your car.
>
> 3. the creditor, as to its interest, if your car has been repossessed.

■ State Farm's contention that First National cannot recover because it has not repossessed the automobile is premised on the incorrect assumption that subsection (2) of the above provision is inapplicable because the insured, Ola Stockton, does not have an interest in the policy. However, as held above, she does have an interest in the policy since State Farm did not effectively cancel the policy. Subsection (2) does not require repossession but simply that the insurer find it impractical to repair the automobile in question. State Farm does not dispute the fact that this condition has been satisfied. In fact, one of its witnesses admitted that the car was "totaled." Therefore, we find the trial court was correct in entering judgment in favor of First National Bank.

State Farm also argues that the trial court erred in holding that First National Bank was entitled to a judgment against State Farm in the amount of $1,348.40 plus interest in that there is no evidence to support such a ruling.

Stockton testified at trial that the market value of her automobile was $2,300.00. She admitted that she derived this figure from the fact that she paid $2,300.00 for the vehicle four months prior to the accident. The stipulated NADA (National Automobile Dealers' Association) market value on the date of the accident was $1,905.00. The trial court averaged the two numbers for an actual cash value of $2,100.00. Pursuant to the "Limit of Liability" section of the policy, the court subtracted the policy deductible of $500.00 and the stipulated salvage value of $251.60, resulting in a net judgment of $1,348.40.

■ State Farm asserts, in effect, that what Ola Stockton paid for the car four months prior to the accident was incompetent evidence of market value. State Farm cites no authority in support of this proposition, nor is the argument convincing on its face. Therefore, we do not consider its contention. *Reed v. Alcoholic Beverage Control Div.*, 295 Ark. 9, 746 S.W.2d 368 (1988).

Affirmed.

PURTLE and HAYS, JJ., dissent in part.

JOHN I. PURTLE, Justice, dissenting. I disagree with that part of the majority opinion which holds that before cancellation

is effective as to an insured, the lienholder must also be notified. It is true that the notice of cancellation provision of Ark. Code Ann. § 23-89-304 (1987) uses the conjunctive "and"; i.e., that no notice of cancellation "shall be effective unless mailed or delivered by the insurer to the named insured *and* to any bank . . . ." (Emphasis added.) However, a literal reading of these words gives an absurd result. Such a literal reading results in a construction of this statute which is completely contrary to its obvious purpose. It is therefore imperative that the history of this statute be considered.

The history of this statute commences with Act 333 of 1969, and was first amended by Act 66 of 1973. As amended in 1973 the statute read as follows:

> (a) No notice of cancellation of a policy to which Section 2 of Act 333 hereof applies, and no notice of cancellation of a policy which has been in effect less than sixty (60) days at the time notice of cancellation is mailed or delivered, shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation, provided, however, that where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given.

It takes no imagination at all to realize that lending institutions holding liens on policyholders' vehicles were left out in the cold if the policyholder allowed a policy to lapse and the insurer failed to notify the lienholder. Needless to say such institutions initiated reform of this statute which manifested itself as Act 528 of 1975. The act amended the existing statute simply by inserting into the law the following words: "and to any bank, or any other lending institution having a lien on the named insured's automobile."

Obviously the purpose of the amendment was to protect lending institutions because insureds were already protected. However the added provision requiring notice to the lienholder was inartfully drafted. Had a comma simply been inserted before the added words, the true intent would have perhaps been more clear. The application of the first rule of statutory construction (i.e., that a statute, if not ambiguous, is to be construed just as it

reads) thus gives the absurd conclusion reached by this court: the amendment which was designed to protect the lienholder's interest results in a completely unjustifiable windfall to the insured. Act 528 amended the statute to read as follows:

> (a) No notice of cancellation of a policy to which Section 2 of Act 333 hereof applies, and no notice of cancellation of a policy which has been in effect less than sixty (60) days at the time notice of cancellation is mailed or delivered, shall be effective unless mailed or delivered by the insurer to the named insured *and to any bank, or any other lending institution having a lien on the named insured's automobile*, at least twenty (20) days prior to the effective date of cancellation, provided, however, that where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given. [Emphasized words were added by Act 528.]

The result of the majority opinion is that the insurer must notify both the insured and the lending institution for the notice to either to be effective. Surely that was not the intent of Act 528.

I concede that the majority interprets the statute just as it reads. That is the proper and correct thing to do—unless the results of such reading are obviously irrational, which is the case here.

HAYS, J., joins this dissent.