2011 Ark. App. 709

**PETROHAWK PROPERTIES, LP, Appellant**

v.

**Isaac HEIGLE, Lance Heigle, Roy Heigle, and Claude Wallace, Appellees.**

**No. CA 11–419.**

Court of Appeals of Arkansas.

Nov. 16, 2011.

G. Alan Perkins, Julie DeWoody Greathouse and Matthew N. Miller, Little Rock, for appellant.

Melanie L. Grayson and Keith L. Grayson, Heber Springs, for appellee.

RAYMOND R. ABRAMSON, Judge.

[1]Appellant Petrohawk Properties is the lessee on four oil-and-gas leases executed by appellees Isaac Heigle, Lance Heigle, Roy Heigle, and Claude Wallace (the Heigles).[1] The leases were signed in May

---

1. The Heigles executed the leases with Petrohawk's predecessor, Gaslight Exploration, LLC.

2005 and provided a primary term of five years with the possibility of extension if certain conditions were met. Shortly after the end of the five-year term, the Heigles sued Petrohawk, seeking a declaration that the leases had expired. Petrohawk responded that its operations on the leased property extended the leases into a secondary term. The circuit court ruled that the leases expired at the end of the primary term. Petrohawk appeals and argues that the court erred in its interpretation. We affirm the circuit court's ruling.

The leases covered various properties in Cleburne County.[2] Each lease contained the following habendum clause, which established the term of the lease:

> It is agreed that this lease shall remain in force for a term of *Five (5)* years from the date (herein called *primary term*) and as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee, and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

(Emphasis in original.) The lease then defined the term "operations" as follows:

> Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search of or in an endeavor to obtain production of oil, gas, or other minerals, or production of oil, gas, or other minerals, whether or not in paying quantities.

The issues in this case revolve around that portion of the habendum clause that

extends the lease term "as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee, *and* as long thereafter as operations, as hereinafter defined, are conducted...." (Emphasis added.) The Heigles argue that the use of the word "and" means that, in order to extend the lease into a secondary term, the lessee must both conduct operations and produce oil or gas during the primary term and thereafter. Petrohawk argues that the habendum clause affords two alternative means by which to effect an extension: commencement of production *or* operations during the primary term and continuing thereafter.

The facts are undisputed in all pertinent respects. No gas was produced on the leased property before the end of the five-year lease term. But, in April 2010, just before the expiration of the leases, Petrohawk began clearing a roadway and a well-pad site on the leased land and obtained a drilling permit for a proposed well. The Heigles do not dispute that these activities constituted operations as defined in the lease. Petrohawk then continued its operations beyond the end of the primary term and eventually began producing natural gas.

On June 7, 2010, and July 19, 2010, the Heigles filed a complaint and an amended complaint in Cleburne County Circuit Court, seeking a declaration that the leases expired at the end of the five-year primary term.[3] The Heigles alleged that their leases could not be extended by simply commencing operations during the primary term and then continuing them but required that production of oil or gas also

---

**2.** Isaac Heigle leased the rights to 34.24 acres in Section 4, Township 9N, Range 10W; Lance Heigle to 60 acres in Section 4, Township 9N, Range 10W; Roy Heigle to 80 acres in Section 4, Township 9N, Range 10W; and Claude Wallace to 76.707 acres in Sections 4,

30, & 31, Townships 9 & 11N, Ranges 9 & 10W.

**3.** The amended complaint named three defendants, but the defendants other than Petrohawk were dismissed by court orders.

be commenced within the primary term. They claimed that, because Petrohawk did not commence production during the primary term, the leases expired. Petrohawk answered that its operations, conducted both before and after the end of the primary term, satisfied the conditions necessary to extend the leases.

The issues were presented to the circuit court by cross-motions for summary judgment. Following a hearing, the court ruled that both conditions of the habendum clause—operations *and* production—must be satisfied in order to extend the lease beyond its primary term and that, because Petrohawk had not produced oil or gas by the expiration of the primary term, the leases expired. Petrohawk now appeals the court's ruling. Because the parties filed cross-motions[4] for summary judgment and agree on the basic facts, we need only determine if the Heigles were entitled to judgment as a matter of law. *Pam's Inv. Props. v. McCampbell,* 2011 Ark. 279, 2011 WL 1425015.

The duration of an oil-and-gas lease is subject to extension if the habendum clause contains a "thereafter" provision. A "thereafter" provision defines those activities that the lessee must conduct both during the primary term and after the primary term in order to keep the lease alive. *See* 2 W.L. Summers, *The Law of Oil and Gas* § 14:8 (3d ed.2006). Thus, if a lease states that it is to last five years "and as long thereafter" as oil or gas is produced, production during the primary term is a condition to the extension of the lease. 2 W.L. Summers, *The Law of Oil and Gas* §§ 14:7 & 14:8 (3d ed.2006); 3 Patrick Martin & Bruce Kramer, *Williams & Meyers Oil & Gas Law* §§ 604 & 604.1 (Rev. ed.2010). Similarly, if a lease states a term of five years "and as long thereafter" as operations are conducted, operations must begin during the primary term in order to extend the lease. *See generally Mize v. Exxon Corp.,* 640 F.2d 637 (5th Cir.1981); *Snowden v. JRE Invs.,* 2010 Ark. 276, 370 S.W.3d 215; *Garner v. XTO Energy,* 2011 Ark. App. 606, 2011 WL 4824319.

■ The habendum clause in the present case contains two thereafter provisions, connected by the word "and." One provision extends the lease "as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee. . . ." The other extends the lease "as long thereafter as operations, as hereinafter defined, are conducted. . . ." The word "and" is a conjunctive term. Where two conditions are joined by that term, both must be met in order[5] to carry out the meaning of the contract. *See Smith v. Farm Bureau Mut. Ins. Co.,* 88 Ark.App. 22, 194 S.W.3d 212 (2004) (holding that an insurance-policy provision defining a motor vehicle to include a trailer designed for travel on public roads *and* subject to motor vehicle registration means that the trailer must meet both requirements to fit the definition). *See also State Farm Fire & Cas. Co. v. Stockton,* 295 Ark. 560, 750 S.W.2d 945 (1988) (holding that a statute requiring an automobile insurer to send notice of cancellation to the named insured *and* to any bank having a lien on the vehicle means that the notice must be sent to both).

■ Words of a lease are to be taken and understood in their plain and ordinary sense. *Phi Kappa Tau Housing Corp. v. Wengert,* 350 Ark. 335, 86 S.W.3d 856 (2002). Here, the word "and" in the habendum clause plainly means that both the production condition and the operations condition must be met in order to continue the lease term. Given the undisputed fact that no production occurred on the leased property during the five-year primary term, we conclude that the leases expired at the end of the five-year primary term.

Petrohawk argues that the language in the present leases is comparable to that in *Snowden, supra,* and *Garner, supra,* in which operations were held to extend the primary term of a lease. In fact, the language in those cases is easily distinguishable. In *Snowden* and *Garner,* the habendum clauses provided that the leases would remain in force for a set number of years and as long thereafter as oil, gas, or other hydrocarbons were produced. A separate provision then stated that "notwithstanding anything contained in this Lease to the contrary," it was agreed that, if the lessee commenced operations while the lease was in force, the lease would remain in force so long as such operations were prosecuted. The leases in *Snowden* and *Garner* thus expressly contemplated that operations alone could extend the primary term. Significantly, the operations condition in those cases is not linked with the production condition by the word "and," as in the present case, but is set apart in a distinct provision, described as being operable "notwithstanding" the production condition.

Petrohawk also argues that interpreting "and" in the conjunctive leads to an absurd result. It posits that a lessee that is producing gas at the end of the primary lease term cannot extend the lease unless the lessee is also conducting "operations" on the property, thus leading to the unlikely scenario of a lease expiring while it is still producing. It is true that the word "and" and its disjunctive companion "or" have sometimes been interpreted contrary to their regularly accepted meanings in order to avoid an absurd interpretation in a document or statute. *See, e.g., Ortho–McNeil Pharm. v. Mylan Labs.,* 520 F.3d 1358 (Fed.Cir.2008); *City of Dover v. Barton,* 337 Ark. 186, 987 S.W.2d 705 (1999); *Shinn v. Heath,* 259 Ark. 577, 535 S.W.2d 57 (1976). No absurd result occurs here, however. The leases define the term "operations" to include the "production of oil, gas, or other minerals, whether or not in paying quantities." Thus, a lessee's production of oil or gas during the primary term would necessarily meet both the production requirement and the operations requirement for extending the primary term. As a result, a producing well would always extend the primary term.

Petrohawk next argues that the intention of the parties is to be gathered not from disjointed or particular words and phrases found in the contract but instead from the whole context of the agreement. *Garner,* 2011 Ark. App. 606, 2011 WL 4824319. It contends that interpreting "and" in the conjunctive sense results in disharmony with other sections of the lease, such as the force majeure clause,[4] the shut-in clause,[5] and the pooling clause.[6] We disagree.

■■■ The pooling clause provides that "operations upon and production from" unitized property shall be treated "as if such operations were upon *or* such production was from the leased premises...." (Emphasis added.) While this clause contemplates that either operations or production might occur on the leased property, or on the property with which it has been

---

4. A clause generally relieving the lessee from the harsh termination of the lease due to circumstances beyond its control that would make performance untenable or impossible, such as acts of God. 38 Am.Jur.2d *Gas & Oil* § 91 (1999).

5. A well is shut in where it is capable of paying production but is unable to produce for want of a market, such as where a pipeline to the well has not been connected. 3 Patrick Martin & Bruce Kramer, *Williams & Meyers Oil & Gas Law* § 631 (Rev. ed.2010).

6. A clause that allows the lessee to operate separately owned tracts as a unit. 2 W.L. Summers, *The Law of Oil and Gas* § 14:38 (3d ed.2006).

pooled, it does not address whether production, operations, or both are required to extend the lease beyond the primary term, as does the habendum clause. Thus, there is no conflict between the pooling clause and the habendum clause. Likewise, the shut-in clause, which states that, in a shut-in situation, the lease shall "continue in force as though operations are being conducted" does not purport to define or specify the circumstances under which the lease shall be extended beyond the primary term.

 The force majeure clause does touch on the matter of extending the primary lease term. It essentially provides that, if the lessee "is not conducting operations" by reason of any law, rule, order, regulation, or other cause beyond the lessee's control, the primary term may be extended *for a set period following the removal of the cause of the delay*, and the lease "may be extended thereafter by operations as if such delay had not occurred." Petrohawk insists that it is incongruous to interpret the habendum clause as requiring both production and operations in order to extend the lease when the force majeure clause permits an extension by operations alone. We see no incongruity. The force majeure clause recognizes that a lessee that is "not conducting operations" due to events beyond its reasonable control should be allowed to extend the lease term by "operations" once the cause of the delay is removed. The habendum clause, by contrast, makes it clear that, in the ordinary course of events where outside forces do not delay the lessee's activities, the lessee may only extend the lease where operations *and* production have occurred during the primary term.

Petrohawk also argues that the Heigles executed "paid-up" leases, meaning that any delay rentals were fully paid in advance, and they therefore implicitly agreed that the lease might continue even if production were not achieved during the primary term. While the leases in this case are of the paid-up variety, Petrohawk cannot escape the fact that the plain language of each lease's habendum clause requires, as conditions for *extension* of the lease, that the lessee commence production and operations during the primary term.

Finally, Petrohawk appears to argue that the circuit court erred by not making specific findings of fact, pursuant to Ark. R. Civ. P. 52(a) (2011). This case was decided on motions for summary judgment. Findings of fact and conclusions of law are unnecessary on decisions of motions. *Id.*

Affirmed.

WYNNE and BROWN, JJ., agree.