James M. SHEPHERD, Administrator of the
Estate of Donna L. Shepherd; Jerry Kent Snow,
Administrator of the Estate of Rena Kay Snow;
Williams James Kennedy, Administrator of the
Estate of Cheryl Lynn Holcombe; and Kelli
Shawn Wheeler and Darrell Wheeler *v.* STATE
AUTO PROPERTY AND CASUALTY INSURANCE
COMPANY

92-411 850 S.W.2d 324

Supreme Court of Arkansas
Opinion delivered April 5, 1993

504

*Ronald W. Metcalf*, for appellants Shepherd and Wheeler.

*Phillip K. Kinsey*, for appellant Cheryl Lynn Holcombe.

*Gean, Gean & Gean*, by: *Thomas C. Gean*, for appellant Rena Kay Snow.

*Hardin, Jesson, Dawson & Terry*, by: *Robert T. Dawson* and *J. Rodney Mills*, for appellee.

ROBERT L. BROWN, Justice. This appeal arises out of an automobile accident in which the drivers of both vehicles, Cheryl Holcombe and Terry Arthur Van-Beber, died. Two passengers in Holcombe's vehicle, Donna Shepherd and Kay Snow, were also killed and a third passenger, Kelli Shawn Wheeler, was permanently injured. The appeal and cross appeal center upon the appropriate amount of underinsured benefits to be paid by the appellee, State Auto Property and Casualty Insurance Company, to the appellants. Issues are also raised concerning the propriety of a 12 percent penalty assessed against State Auto and what are proper attorneys' fees and prejudgment interest under these circumstances.

On May 17, 1989, Van-Beber was operating his car, while intoxicated, in the wrong direction on Interstate 40 in Pope County. His vehicle collided with the car owned and operated by Cheryl Lynn Holcombe with her three passengers. All four women were employed by Arkansas Best Corporation and were in

the course of their employment at the time of the accident. Van-Beber's car was insured for $50,000 bodily-injury liability coverage. Holcombe's vehicle carried underinsurance coverage through the appellee, State Auto, with policy limits of $300,000.

The appellants, who are the personal representatives of the deceased women's estates and Kelli Sharon Wheeler and her husband, Darrell Wheeler, pursued litigation against Van-Beber's estate, alleging negligence. The Wheelers and the estates of Shepherd and Snow eventually also cross-claimed against the estate of Cheryl Lynn Holcombe after a State Police accident reconstruction report was released indicating that the Holcombe vehicle was traveling in excess of 77 miles per hour at the point of impact. Because damages of the victims exceeded Van-Beber's resources, the appellants made demand on State Auto on July 31, 1989, for the $300,000 underinsurance policy limits on the Holcombe vehicle without regard to any offsets. The demand was refused.

From July 1 through July 3, 1991, a trial was held on the negligence issues, and the jury assessed 100 percent negligence against Van-Beber and no negligence against Holcombe. A verdict was rendered in favor of the appellants against Van-Beber in the amount of $1,216,168.85.

Later, on November 13, 1991, a hearing was held on stipulated facts on the matter of State Auto's underinsurance, with the principal issue being whether State Auto was entitled to offset workers' compensation benefits and the liability proceeds in the amount of $50,000 paid by Van-Beber's carrier. Arkansas Best Corporation, as the employer of the four victims in the Holcombe vehicle, had paid the following workers' compensation benefits to the victims as of October 21, 1991: Wheeler — $78,131; Shepherd — $44,566; Snow — $29,344; Holcombe — $29,494. The amounts totaled $181,535.

The trial court announced its decision and judgment was subsequently entered on December 12, 1991, in favor of the appellants and against State Auto in the amount of $250,000, with the trial court finding that the carrier was entitled to offset the $50,000 Van-Beber liability policy against its $300,000 policy limits. The trial court also found that Arkansas Best was entitled to a two-thirds workers' compensation lien on the

$50,000 Van-Beber benefits after deducting trial expenses of $9,200 and a one-third attorneys' fee to be divided among the appellants' attorneys. The court refused, however, to permit State Auto to offset the amount of workers' compensation payments.

Included in the judgment were attorneys' fees of $30,000, to be divided among the appellants' three attorneys as follows: $20,000 to Ronald Metcalf, counsel for Shepherd and Wheeler; $5,000 to Roy Gean, Jr., counsel for Snow; and $5,000 to Phillip Kinsey, counsel for Holcombe. Prejudgment interest was calculated at six percent on the $250,000 from July 31, 1989, to December 12, 1991, and ten percent thereafter. The trial court held that the 12 percent penalty provision for failure to pay insurance benefits upon demand under Ark. Code Ann. § 23-79-209 (Repl. 1992) did not apply because the offset of certain collateral benefits against underinsured benefits was a matter of first impression in this state.

The judgment was entered on December 12, 1991. State Auto voluntarily paid the judgment amounts against it totalling $317,183.34 on January 2, 1991, and the trial court entered an Order of Disbursement, which included an order that the judgment against State Auto was satisfied and discharged in full. The Order of Disbursement was signed and entered, the appellants claim, without notice to them. Subsequently, the appellants and their attorneys individually endorsed and cashed the checks made out to them on various dates within the month of January 1992.

On January 10, 1992, the appellants filed a joint notice of appeal and designation of record and asserted in their Statement of Points the following:

> The Circuit Judge erred as a matter of law by finding that State Auto can offset their $300,000 underinsurance policy limits by the amount of $50,000 automobile liability coverage of Terry Arthur Van-Beber.

> The Circuit Judge erred as a matter of law by finding that State Auto is not liable for a 12% penalty on the principal sum of $300,000.

> The Circuit Judge erred as a matter of law by making an inadequate award of attorneys' fees to Appellants.

> The Circuit Judge erred as a matter of law by failing to assess prejudgment interest on the principal sum of $300,000 instead of $250,000.

State Auto filed a notice of cross-appeal on January 21, 1992, asserting in its Statement of Points that the trial court erred in not offsetting workers' compensation payments and, further, that the appellants had waived the right to appeal because they accepted payments on the judgment from State Auto.

On April 15, 1992, the appellants filed their motion to dismiss the cross appeal of State Auto due to voluntary payment of the judgment amounts. According to an affidavit by appellants' counsel attached to the motion, payment of $317,183.34 by State Auto representing payment of $250,000 in underinsurance benefits, attorneys' fees and prejudgment interest was made without prior notice to appellants and without a request from them. In the same affidavit, the appellants' counsel attest that the Order of Disbursement, satisfying the judgment in full, was entered without notice to them or their agreement. The affidavit also contains an averment that State Auto's counsel advised the affiants that the reason for the Order of Disbursement was to stop the accumulation of the ten percent postjudgment interest.

On April 27, 1992, State Auto moved to dismiss the appellants' appeal due to their receipt of the $317,183.34 paid into court in satisfaction of the judgment.

## I. STATE AUTO'S MOTION TO DISMISS THE APPELLANTS' APPEAL

State Auto's motion to dismiss the appellants' appeal is premised on the theory that a party cannot accept benefits from a judgment and at the same time contest that judgment. The appellants retort that their acceptance of the judgment payment was not inconsistent with the points they now specifically raise on appeal, to wit, the $50,000 offset for Van-Beber's liability coverage was error, a 12 percent penalty should have been assessed, and the attorneys' fees and prejudgment interest awarded were inadequate and constituted an abuse of discretion.

■ The governing law on this issue was handed down early on, and both sides cite it in part:

Again, a party may prosecute his appeal from a judgment, partly in his favor and partly against him, even after accepting the benefit awarded him by the judgment, provided the record discloses that what he recovers is his in any event — that is, whether the judgment be reversed or affirmed. But he waives his right to an appeal by accepting a benefit which is inconsistent with the claim of right he seeks to establish by the appeal. "A party cannot ratify and yet repudiate the same transaction in one breath. He must make his election at the outset to repudiate it *in toto* or take it *cum onere*, and, when once made and acted upon, he is estopped from assuming an attitude inconsistent with his first position and detrimental to the rights of others."

*Bolen* v. *Cumby*, 53 Ark. 514, 515 (1890). That basic proposition has been quoted with approbation by this court in later cases. *See, e.g., Arkansas State Hy. Comm'n* v. *Marlar*, 236 Ark. 385, 366 S.W.2d 191 (1963); *Anderson* v. *Anderson*, 223 Ark. 571, 267 S.W.2d 316 (1954); *Jones* v. *Rogers*, 222 Ark. 523, 261 S.W.2d 649 (1953); *McCown* v. *Nicks*, 171 Ark. 260, 248 S.W.2d 739 (1926).

This issue, therefore, turns on whether the appellants' appeal is inconsistent with their acceptance of the judgment amounts. We think not. The judgment awards that were accepted were the appellants *in any event.* In contrast, their claims on appeal expressly go to *additional* awards related to the liability policy offset, penalties, attorneys' fees, and interest as set forth in their Statement of Points. We are mindful that the Order of Disbursement states that the judgment is satisfied in full and that State Auto is discharged from liability due to its payment. The appellants, however, were not notified of the Order and aver that they did not agree that the Order satisfied the liability of State Auto in full. To be sure, State Auto paid the judgment amounts ordered by the trial court. But the order does not purport to foreclose the appellants' right to appeal regarding any additional liability of State Auto.

On this point, it is instructive that the trial court itself contemplated an appeal when it stated with reference to its decision to deny a 12 percent penalty at the November 13, 1991 hearing: "Well, I realize this will be appealed and I assume you'll

find out when it is, how far I'm out of line and then we'll know." That statement suggests that the trial court anticipated that an appeal was in the offing.

■ Under the circumstances, we do not believe that the appellants' acceptance of State Auto's judgment payments or the language of the Order of Disbursement prevent an appeal on the separate points raised in this appeal. We deny State Auto's motion to dismiss.

## II. APPELLANTS' MOTION TO DISMISS CROSS APPEAL OF STATE AUTO

In the wake of the appellants' notice of appeal filed January 10, 1992, State Auto filed its notice of cross appeal on January 21, 1992, and stated as its principal point that the trial court erred in not offsetting workers' compensation payments against underinsurance benefits. Prefatory to its notice of appeal, State Auto had voluntarily paid into court the judgment amounts awarded against it totalling $317,183.34. It is that voluntary payment of the judgment that the appellants contend negated State Auto's ability to cross-appeal. We agree.

A 1982 case handed down by the Court of Appeals is persuasive on this issue. *See Lytle* v. *Citizens Bank of Batesville*, 4 Ark. App. 294, 630 S.W.2d 546 (1982). In that case, the appellant satisfied a deficiency judgment against him which was owed the bank which arose out of a tractor sale. After paying the judgment, the appellant appealed. The bank contended that the appeal was moot due to the voluntary satisfaction of judgment and the fact that the appellant had not posted a supersedeas bond. The Court of Appeals hinged its decision on the failure to post bond:

> We adopt the majority rule as the better reasoned rule. Thus, if appellant's payment was voluntary, then the case is moot, but if the payment was involuntary, this appeal is not precluded. In applying this rule to the facts at bar, we must determine whether the payment made by appellant was voluntary or involuntary. In doing so, we believe that one of the most important factors to be considered is whether appellant was able to post a supersedeas bond at the time he satisfied the judgment. The record

supports the conclusion that he could have done so.

4 Ark. App. at 297, 630 S.W.2d at 547.

Similarly, in the case before us State Auto could have posted a supersedeas bond and elected to appeal on the failure of the trial court to offset workers' compensation benefits. It elected not to do so, however, but instead paid the full judgment amounts and on that same date, unbeknownst to the appellants, obtained an immediate Order of Disbursement discharging it from liability on the judgment.

■ We view voluntary payment of a judgment amount assessed against a party as entirely inconsistent with a subsequent appeal directly related to that payment. Should State Auto prevail on its cross appeal, it would be entitled to an offset against the amount already paid for workers' compensation benefits. That should not be. State Auto willingly paid the total judgment amount, thereby rendering any later contest involving that amount moot.

The appellants' motion to dismiss State Auto's cross appeal is granted.

### III. OFFSET OF TORTFEASOR'S LIABILITY COVERAGE

The appellants first argue on appeal that the trial court was in error in offsetting Van-Beber's $50,000 liability proceeds against the underinsured benefit of $300,000. We agree.

This question is resolved by our recent decision in *American Casualty Co. v. Mason*, 312 Ark. 166, 847 S.W.2d 392 (1993). There, we considered whether the General Assembly intended under Act 335 of 1987, codified as Ark. Code Ann. § 23-89-209 (Supp. 1989), for an insured to receive the limits of underinsured motorist coverage over and above any recovery from the tortfeasor's carrier if that recovery was not adequate to fully compensate the insured. We concluded that it did.

■ We noted in *Mason* that the language of Act 335 was somewhat unclear, but that "the changes made to section 23-89-209(a) by Act 209 of 1991, the title of Act 209, and the emergency clause of Act 209, clearly indicate the legislature intended underinsured motorist benefits under Act 335 of 1987 to

be provided without regard to the amount of insurance carried by any liable party." 312 Ark. at 170, 847 S.W.2d at 394.

Though the accident in the present case occurred prior to the enactment of Act 209 of 1991, as was the case in *Mason*, the emergency clause in Act 209 amplifies legislative intent relative to passage of the 1987 act:

> It is hereby found and determined by the General Assembly that the present underinsured motorist insurance coverage law is being misinterpreted; that under the present misinterpretation persons covered by underinsured motorist coverage may not receive the benefits intended by the law; and that this act clarifies the law and should therefore go into effect immediately in order to resolve the misinterpretation as soon as possible.

■ The appellants were not paid in full by the tortfeasor's coverage and the underinsured benefits. The offset of $50,000 against the underinsured benefits was, therefore, error, and the decision of the trial court is reversed on this point. We remand so that judgment against State Auto in the full amount of $300,000 may be entered.

### IV. 12 PERCENT PENALTY

The appellants contend that they made demand on State Auto to pay full benefits on July 31, 1989, and that they were entitled to judgment in the amount of $300,000. Because of this, the 12 percent penalty as authorized by Ark. Code Ann. § 23-79-208 (Repl. 1992) should have been assessed. The trial court declined to award the appellants the statutory penalty because it believed the case to be one of first impression in this state and State Auto was, therefore, justified in following the language of its insurance policy which contemplated a workers' compensation offset. The trial court did, however, award reasonable attorneys' fees under § 23-79-208.

■ The allowance of the statutory penalty and attorneys' fees is penal in nature and a procedural matter. *USAA Life Ins. Co. v. Boyce*, 294 Ark. 575, 745 S.W.2d 136 (1988). As the language of § 23-79-208(a) states, the penalty is to be added to recovery when an insurer, after demand, fails to pay for an insured loss within the time specified in the policy. *Simmons First*

*Nat'l Bank* v. *Liberty Mutual Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984). The punitive nature of the statute is directed against the unwarranted delaying tactics of insurers. *Id.*

■ Because the statute is highly penal in nature, it is to be strictly construed. *Callum* v. *Farmers Union Mutual Ins. Co.*, 256 Ark. 376, 508 S.W.2d 316 (1974). Heretofore, it was necessary for the plaintiff to recover the exact amount claimed in order to collect the penalty and attorneys' fees. *Miller's Mutual Ins. Co.* v. *Keith Smith Co.*, 284 Ark. 124, 680 S.W.2d 102 (1984). With the enactment of Act 349 of 1991, which added a subsection (d) to § 23-79-208, recoveries within twenty percent of the claimed amount entitled the claimant to the 12 percent penalty and attorneys' fees.

Two offsets against the underinsured benefits were at issue here: $50,000 received from Van-Beber's liability policy, and $181,535 in paid workers' compensation benefits. The offset of $50,000 was contrary to the purpose behind the underinsured motorist law, as already discussed.

■■ Secondly, while there may be no Arkansas authority precisely on point with regard to underinsured policies and workers' compensation benefits, we have held that the amount of recovery under the *uninsured* motorist provisions of a liability policy could not be reduced by the amount the injured party received under workers' compensation coverage where the setoff provision reduced the limit of liability under the uninsured motorist coverage. *Travelers Ins. Co.* v. *National Farmers Union Property & Casualty Co.*, 252 Ark. 624, 480 S.W.2d 585 (1972). Moreover, in *O'Bar* v. *MFA Mutual Ins. Co.*, 275 Ark. 247, 628 S.W.2d 561 (1982), we held that accidental death benefits should not be reduced because an insured's beneficiaries also received workers' compensation payment for the insured's death and that a clause in a policy denying benefits on such a basis is a violation of public policy.

■ Underinsured motorist coverage was enacted in this state in 1987 to supplement benefits recovered from a tortfeasor's liability carrier. Ark. Code Ann. § 23-89-209 (1987). We have stated its purpose to be "to provide compensation to the extent of the injury, subject to the policy limit." *Clampit* v. *State*, 309 Ark. 107, 110, 828 S.W.2d 593, 595 (1992).

 Even though a precise case applicable to underinsured policies had not been decided at the time State Auto refused to pay underinsured benefits, we believe that the public policy of the state could be sufficiently extrapolated from analogous cases and from the underinsured motorist statute itself. Even with the knowledge of the State's clear public policy, State Auto refused to pay though a demand for payment was made on July 31, 1989. In the light of these facts, State Auto's good-faith argument must fail.

Because we hold today that payment of the policy limits of $300,000 was appropriate, State Auto has no argument that the penalty is inapplicable due to an award of less than the amount claimed. We further observe that at the time of trial in November 1991, Act 349 of 1991 was in effect which authorized the penalty and attorneys' fees when the amount recovered was twenty percent less than the amount claimed. The amount awarded by the trial court — $250,000 — was within twenty percent of the amount claimed by the appellants — $300,000.

 We hold that the penalty statute was appropriately invoked, and we remand for an order assessing the 12 percent penalty from date of demand under § 23-79-208.

## V. REASONABLE ATTORNEYS' FEES

The appellants next contend that the attorneys' fees of $30,000 were not reasonable under § 23-79-208 when divided among three attorneys. We disagree.

 There is no fixed formula for a trial court to use in determining the reasonableness of attorneys' fees. *Southall* v. *Farm Bureau Mutual Ins. Co.*, 283 Ark. 335, 676 S.W.2d 228 (1984). This court has, however, recognized factors such as the experience and ability of the attorney; the time and work required; the amount involved in the case and the results obtained; the novelty and difficulty of the issues involved; the fee customarily charged in the locality for similar legal services; whether the fee is fixed or contingent; the time limitations imposed upon the client or the circumstances; and the likelihood, if apparent to the client, that the acceptance of the particular case will preclude other employment by the lawyer. *Northwestern Nat'l Life Ins. Co.* v. *Heslip*, 309 Ark. 319, 832 S.W.2d 463

(1992).

The trial court is to consider the factors listed above in exercising its discretion. *Northwestern Nat'l Life Ins. Co.* v. *Heslip, supra.* Because of the trial court's intimate acquaintance with the record and the quality of the service rendered, we generally recognize the superior perspective of the trial court in assessing the applicable factors. *State Farm Fire & Casualty Co.* v. *Stockton,* 295 Ark. 560, 750 S.W.2d 945 (1988). Accordingly, an award of attorneys' fees will not be set aside absent an abuse of discretion by the trial court. *Id.*

The appellants are emphatic and forceful in their argument that the present case involved complex issues and multiple parties. The attorneys computed their own expenses at $7,000 for Metcalf, and $1,100 each for Gean and Kinsey. Metcalf estimated that he had spent 565 hours and 20 minutes on the case at $150 per hour. He requested a fee of $84,800. Gean billed a total of 318 hours at $200 per hour, bringing his fee to $63,600.

In making its award, and apportioning it at $20,000 for Metcalf, $5,000 for Gean, and $5,000 for Kinsey, the trial court noted that attorney Metcalf had "taken the lead" throughout the case. In addition to these amounts, the court awarded costs totalling $9,200 from the $50,000 in liability proceeds and then awarded one-third of the balance as attorneys' fees as required by Ark. Code Ann. § 11-9-410 (1987): Metcalf — $6,800; Kinsey — $3,400; Gean — $3,400.

In sum, the trial court obviously took into account the respective efforts of the three attorneys for the appellants and the other attorneys' fees paid. No abuse of discretion is readily apparent. We affirm the trial court on this point.

## VI. PREJUDGMENT INTEREST

Because we have decided that the appellants are entitled to $300,000 instead of the $250,000 they were awarded, prejudgment interest must be assessed on the larger sum, dating from July 31, 1989, the date on which demand for payment was made by the appellants to State Auto. The fact that the statutory penalty and attorneys' fees are also assessed against State Auto does not impede an award of prejudgment interest as well. *See USAA Life Ins. Co.* v. *Boyce, supra; Maryland Casualty Co.* v.

*Maloney*, 119 Ark. 434, 178 S.W. 387 (1915).

The appellants assert that they should receive 11.5 percent interest, which was the interest cost to borrow $250,000 from a lending institution in Ft. Smith on July 31, 1989. In the alternative, they argue that they should receive the actual rate of return that they would have received had their money been invested in a 30-year government security on July 31, 1989 — 7.990 percent.

No rate was agreed upon by the parties in this case. Under Ark. Const. Art. 19, § 13, when no rate of interest has been agreed upon by the parties, prejudgment interest is limited to 6 percent. *Killam* v. *Texas Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990); *Wooten* v. *McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981). In *Killam*, we specifically affirmed six percent as prejudgment interest under the state constitution rather than the market rate, when the parties had not agreed otherwise. The trial court awarded the proper rate of prejudgment interest.

Affirmed in part. Reversed in part and remanded for an order in accordance with this opinion.

GLAZE, J. would grant.