STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY *v.* Steve THOMAS and Carol Thomas,
as Parents and Natural Guardians of Lindsay Thomas

93-994                                                871 S.W.2d 571

Supreme Court of Arkansas
Opinion delivered March 14, 1994

*Boswell, Tucker & Brewster,* by: *Clark S. Brewster,* for appellant.

*Lovell & Nalley,* by: *John Doyle Nalley,* for appellees.

ROBERT L. BROWN, Justice. This is the second appeal taken in this case. *See State Farm Mut. Auto. Ins. Co.* v. *Thomas,* 312 Ark. 429, 850 S.W.2d 4 (1993). We dismissed the first appeal for failure to comply with Ark. R. Civ. P. 54(b). Appellant State Farm Mutual Automobile Insurance Company appeals once more and raises the issue of whether the trial court erred in applying the penalty statute (Ark. Code Ann. § 23-79-208 (Supp. 1991) for failure to pay underinsurance benefits upon demand in this case. We conclude that the trial court did err in assessing statutory penalties and attorney's fees, and we reverse and remand.

Steve and Carol Thomas, husband and wife, and their two daughters, Jennifer and Lindsay, were involved in a three-car accident with John Laughlin, deceased, and David Spears on March 29, 1991. Laughlin had carried liability coverage of $100,000 per person with Farmer's Insurance Company. Spears had liability coverage of $25,000 per person with Farm Bureau Insurance Company.

On April 9, 1991, the Thomases filed suit against Laughlin and Spears. On November 1, 1991, the Thomases made demand on State Farm, their carrier, to pay underinsured benefits and sent the carrier a description of partial medical expenses incurred by Lindsay Thomas. According to the demand, Lindsay Thomas, who was five years old at the time of the accident, had sustained head injuries, including skull fractures, and a broken leg. The payment of underinsured benefits was not forthcoming by State Farm. On February 3, 1992, the Thomases filed a second amended complaint naming State Farm as a party defendant and praying for the $25,000 in benefits, for attorney's fees, and for a 12 percent penalty for failure to pay benefits on demand. In the complaint the Thomases alleged that Lindsay Thomas's damages exceeded all liability coverage and that payment under the underinsured coverage was warranted.

On June 10, 1992, the day before trial, Farmer's Insurance Company paid the policy limits — $100,000 — to the Thomases on behalf of its insured, John Laughlin, deceased. Within an hour on that same day, State Farm tendered the $25,000 in underinsured benefits to the Thomases. Though this is somewhat unclear in the record, it appears that no payment of liability benefits had been made at that time by Farm Bureau Insurance Company, the liability carrier for David Spears.

On July 8, 1992, the trial court entered judgment against State Farm in the amount of $5,000 in attorney's fees and a 12 percent penalty to be applied against the $25,000 paid. All other parties to this action have now been dismissed.

We begin by observing once again that our statute, Ark. Code Ann. § 23-79-208, being penal in nature, is strictly construed. *Shepherd* v. *State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *Miller's Mutual Ins. Co.* v. *Keith*

*Smith Co.*, 284 Ark. 124, 680 S.W.2d 102 (1984). The penalty nature of the statute is directed against unwarranted delaying tactics of insurers. *Simmons First National Bank* v. *Liberty Mutual Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984).

State Farm contends that the language of its policy with the Thomases controls:

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY INSURANCE POLICIES OR BONDS THAT APPLY TO THE *INSURED'S BODILY INJURY* HAVE BEEN USED UP BY PAYMENT OF JUDGMENT OR SETTLEMENTS.

This language is highlighted in the policy in capital letters. We agree with State Farm's position.

Clearly, all liability benefits had not been "used up by payment of judgment or settlements" prior to June 10, 1992. State Farm paid immediately after one liability carrier — Farmer's Insurance Company — paid its policy limits. Indeed, State Farm paid its maximum benefit even before it knew what the liability carrier for the other alleged tortfeasor, Farm Bureau Insurance Company, would pay. If anything, State Farm paid before all liability benefits had been amassed. Because the penalty statute, § 23-79-208, only requires payment "within the time specified in the policy," State Farm's payment of benefits was timely.

■ The fact that the bold exclusion in State Farm's policy is not repeated a second time in the policy under the general heading for other exclusions is not fatal and does not create an ambiguity, as the Thomases contend. The exclusion appears on the front page of the policy endorsement providing underinsured coverage and is clear and precise in its meaning.

■ Nor do we read a public policy into either our common law or the underinsured motorist statute (Ark. Code Ann. § 23-89-209 (Supp. 1991)) which militates against this decision. It is practical and pure common sense that underinsurance should not pertain until it is determined whether the insured is in fact underinsured. That means, under the policy language in this case, waiting until all liability benefits have been made available in order to trigger payment of this supplemental coverage.

The Thomases urge that the injuries to Lindsay clearly showed that underinsured coverage would come into play and that State Farm should have evaluated her claim in that light and made payment. The Thomases add that this is precisely what State Farm did with regard to its payment of underinsured benefits to Steve Thomas before all liability benefits had been paid on his behalf. We do not agree that the underinsured motorist coverage statute, § 23-89-209, places this obligation on the carrier.

The underinsured motorist statute contemplates payment by the tortfeasor's insurance company. It also contemplates a determination of the injured party's damages. There is no directive under the statute that the underinsured carrier must investigate and evaluate a claim prior to the payment of liability coverage by the tortfeasor's insurance company. Also, in this case the State Farm policy is clear and precise in stating that there is no underinsured coverage until liability insurance is "used up." Of course, should the liability carriers be dilatory in their payments or operate in bad faith, the insured party has remedies.

■    The order of the trial court assessing a penalty and attorney's fees under § 23-79-208 against State Farm is reversed, and this cause is remanded for an appropriate order to be entered.

Reversed and remanded.

NEWBERN, J., dissents.

CORBIN, J., not participating.

DAVID NEWBERN, Justice, dissenting. State Farm Mutual Insurance Company, (State Farm), appeals from a judgment which awarded Lindsay Thomas, the insured, attorneys' fees and a 12% penalty pursuant to Ark. Code Ann. § 23-79-208(a)(Repl. 1992) for failure to pay Ms. Thomas's claim under a provision for underinsured motorist coverage within a reasonable time. State Farm argues the penalty and fees should not have been awarded as State Farm paid on the underinsured motorist policy immediately after a primary liability insurer tendered its limit to Ms. Thomas in settlement of her claim against one of two motorists allegedly responsible for her injuries. I would affirm the Trial Court's decision.

Ms. Thomas was injured in an automobile accident on March 29, 1991. In effect at the time of the accident was an underinsured motor vehicle policy issued by State Farm. Ms. Thomas made demand for payment of the benefits due under the policy on November 1, 1991, having determined that her medical expenses would exceed primary liability coverage of the persons she alleged to be at fault.

State Farm did not pay, and suit was filed against State Farm on February 3, 1992. State Farm participated in the discovery process, apparently contesting the claim that Ms. Thomas's injuries would require compensation in excess of amounts payable by other insurers which had written primary liability coverage for John Laughlin and David Spears who were the other motorists involved in the accident in which she was injured.

The day before the trial was to begin, Farmer's Insurance Co. tendered to the Thomases $100,000, which was its liability limit on behalf of its insured, John Laughlin. State Farm then paid the $25,000 underinsured motorist benefits despite the fact that Farm Bureau Insurance Co. which insured David Spears for $25,000 against liability had not yet tendered payment. The Trial Court ruled that Ms. Thomas was entitled to the statutory penalty and attorneys' fees under §23-79-208(a).

Section 23-79-208(a) imposes the penalty and fee requirement on an insurer which fails to pay a claim "within the time specified in the policy." The policy provides, "[t]here is no coverage until the limits of liability of all bodily injury liability insurance policies or bonds that apply to the insured's bodily injury have been used up by payment of judgments or settlements." According to State Farm, the "time specified in the policy" was the time after primary liability coverage was exhausted. No explanation is given for the payment by State Farm while the additional $25,000 liability coverage of David Spears had not been tendered and was thus not exhausted.

The underinsured motorist coverage law was enacted to supplement benefits recovered from a tortfeasor's liability carrier. *See Shepherd* v. *State Auto Property & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993). The purpose of underinsured motorist coverage is to provide compensation to the extent of the injury,

subject to the policy limit. *See Clampit* v. *State Farm Mutual Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992).

The penal nature of §23-79-208 is directed against the unwarranted delaying tactics of insurers. *Shepherd* v. *State Auto Property and Cas. Co., supra.* The penalty attaches to a claim against an insurance company if suit is filed even though judgment is confessed before trial. *See Federal Life and Casualty Company* v. *Weyer*, 239 Ark. 663, 391 S.W.2d 22 (1965). The nature of the goal to be achieved by this punitive law remains constant and is not dependent upon the type insurance to which the statute applies.

While § 23-79-208(a), as the majority opinion states, "only requires payment 'within the time specified in the policy,'" the question we must face is whether an insurance company should be allowed to provide a policy which permits it to delay and contest payment of a claim which it could have ascertained to be payable long before the insured was forced to file suit. The majority opinion cites no case law in support of its decision, but relies on the statute and the language of the policy. I question that reliance in view of the cases we have decided in other insurance contexts. We should not allow an insurer to circumvent the intent of the statute.

The majority also states, "that it is pure common sense that underinsurance should not pertain until it is determined whether the insured is in fact underinsured." I question that approach. It suggests that an insurer can write a policy which requires payment only upon final judgment which requires it. Indeed, if we followed State Farm's argument and allowed it to delay for the duration provided in its policy it would not have to pay until not only a judgment had been rendered against the person or persons liable for the injury but could delay until there has been "payment" by the liable parties, and that cannot be the law.

We rejected argument of that type in *Farm Bureau Mut. Ins. Co. Inc.* v. *Mitchell, supra.* There the insurance company denied coverage of an uninsured motorist. After the insured received a favorable jury verdict and judgment, the Trial Court awarded a penalty and attorneys' fee. On appeal the insurer argued the award was erroneous as its responsibility to the insured did not become fixed or definite until the jury returned its verdict.

We held that after the insured was injured and asserted a claim, the insurer was entitled to a reasonable time to investigate, but when the insurance company elected to defend the suit brought by its insured, its decision carried with it the risk of having to pay the penalty.

There is no reason an insurer writing an underinsured motorist policy should not be subject to the same requirement of investigation and payment as the issuer of an uninsured motorist policy to investigate the amount of its liability. In both instances, the insurer should be expected to exercise good faith while dealing with its insured and should be penalized for delaying tactics.

The statutory penalty attaches when a demand for payment is made and, with knowledge of the State's clear public policy, the insurer refuses. *Shepherd* v. *State Auto Property and Cas. Co., supra*. While the rule has not been applied to an underinsured motorist insurer, the public policy involved is the same as has been applied in other cases. An insurer should not be allowed to write a policy in violation of it and thus be permitted to avoid its duty to investigate its responsibility and delay payment on the basis of what other insurers may or may not do when its investigation would have revealed implication of the underinsured motorist coverage of its insured.

I respectfully dissent.