ST. EDWARD MERCY MEDICAL CENTER *v*. Patricia
ELLISON

CA 96-1134                                    946 S.W.2d 726

Court of Appeals of Arkansas
Division IV
Opinion delivered June 18, 1997

*Pryor, Barry, Smith, Karber & Alford, PLC,* by: *Gregory T. Karber,* for appellant.

*Karr & Hutchinson,* by: *W. Asa Hutchinson,* for appellee.

ANDREE LAYTON ROAF, Judge. This is a wrongful discharge case. The appellant, St. Edward Mercy Medical Center (St. Edward), employed the appellee, Patricia Ellison, as a cardiac monitor technician. Ellison was terminated after a delay in alerting the nursing staff that a patient, whom she was monitoring, was in ventricular fibrillation which resulted in the patient's death. Ellison filed suit for wrongful discharge, and was awarded damages of $20,000 in a jury trial. During the trial, St. Edward's motions

for directed verdict were denied. St. Edward appeals from the denial of its motion for judgment notwithstanding the verdict or for a new trial, contending that Ellison was an at-will employee who could be discharged with or without cause. We agree that the trial court erred in denying the motion, and reverse.

Because we agree that St. Edward was entitled to judgment as a matter of law pursuant to the employment-at-will doctrine, we need only summarize the facts leading to Ellison's termination. Ellison was employed by St. Edward as a monitor technician assigned to the cardiac monitor room of the intensive-care unit (I.C.U.). She was discharged for incompetence after St. Edward determined that she had misread a patient's monitor and delayed reporting the problem to the I.C.U. nurses, resulting in the patient's death. Ellison contended that because of understaffing, she was required to watch more groupings of patient monitors at the time than she could safely handle, and more than the terms of her employment required. Thus, she contended that St. Edward breached its agreement with her, and she was fired without cause. She asserted that language contained in documents promulgated by St. Edward created an employment agreement with terms sufficient to constitute an exception to the employment-at-will doctrine, and that St. Edward could not terminate her without cause.

The three documents relied upon by Ellison are St. Edward's employee handbook, a "twelve-hour shift agreement," and a document entitled "Cardiac Monitoring System." Ellison testified that she considered the twelve-hour-shift agreement to be her contract with St. Edward, and that it bound her to perform at a competent level. The twelve-hour shift agreement contains provisions for holiday and vacation pay, life insurance, retirement, leave of absence, sick pay, jury duty, etc., and concludes by stating:

> *ACKNOWLEDGMENT* I have read all the information contained in this 12-hour shift proposal and I understand it. *In consideration of being placed on a 12-hour shift I know that continued status is dependent upon my compliance to the stated rules and regulations.* (Emphasis added.)

The document was signed by Ellison, the nursing-department head, and the director of personnel.

The Cardiac Monitoring System includes a description of the system and provides that:

> [e]ach technician should be responsible for no more than thirty-two patient monitors *or one station of four vistas* . . . . Because of the obligation of constant observation of the patients' monitors, *the technicians must always be replaced with an I.C.U. nurse in the event of staffing shortage in the monitor room.* (Emphasis added.)

Ellison was responsible for ten vistas at the time of the incident which led to her termination because another technician had taken a break and had not been replaced.

Finally, the employee handbook contains an express provision that "employees are employed at will and for an indefinite term"; states that the list of serious offenses for which an employee may be terminated is not considered all inclusive and is provided for informational purposes only; and further states that the employee handbook does not constitute a contract and does not confer any contractual rights on the employee. However, the handbook also describes St. Edward's "progressive disciplinary policy," which is the provision relied upon by Ellison. The policy states:

> [v]iolations of work rules, safety codes, and hospital policies are dealt with appropriately and in a uniform, consistent manner. Depending upon the seriousness of the offense, the progressive disciplinary process *may involve one or more of the following*: preliminary investigation, informal talk, oral warning, written counseling, written first warning, written second warning, suspension (3-5 days), and written final warning or termination. (Emphasis added.)

One of the "serious offenses for which an employee may be terminated" is "[i]mproper performance of duty including malpractice."

On appeal, St. Edward claims that it was entitled to a judgment as a matter of law and that its motion for judgment notwithstanding the verdict was erroneously denied. A directed-verdict motion is a condition precedent to moving for a judgment notwithstanding the verdict. *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993); Ark. R. Civ. P. 50(e). Appellate

review of a denial of a motion for a directed verdict or judgment notwithstanding the verdict entails determining whether the non-movant's proof was so insubstantial as to require a jury verdict, if entered in his behalf, to be set aside. *Nicholson v. Simmons First Nat'l Corp.*, 312 Ark. 291, 849 S.W.2d 483 (1993). Arkansas courts have consistently upheld the general rule that a trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict of the jury and the moving party is entitled to judgment as a matter of law. *Schmidt v. Pearson, Evans and Chadwick*, 326 Ark. 499, 931 S.W.2d 774 (1996); *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); See also, *Anslemo v. Tuck*, 325 Ark. 211, 924 S.W.2d 798 (1996); *Dr. Pepper Bottling Co. v. Frantz*, 311 Ark. 136, 842 S.W.2d 37 (1992); *Dedman v. Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). In considering sufficiency of the evidence on appeal, the court will only consider evidence favorable to the appellee together with all its reasonable inferences. *Dedman, supra.*

St. Edward argues specifically that Arkansas law dictates that contracts for employment are at-will contracts with very limited exceptions and that the present case does not present one of those exceptions. St. Edward submits that "at will" means that the contract may be terminated by either party, for any reason, or without a reason. Conversely, Ellison claims that the twelve-hour shift agreement, the employee handbook, and the cardiac monitoring system document constituted a contract which required St. Edward to have cause to terminate her.

■ Generally, the law of this state is that an employer or an employee may terminate an employment relationship at will. *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). Under the employment-at-will doctrine, an at-will employee may be discharged for good cause, no cause, or even a morally wrong cause. *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991). Although the employment-at-will doctrine has been modified in some respects, it continues to represent the law of this state. *Kimble v. Pulaski County Special Sch. Dist.*, 53 Ark. App. 234, 921 S.W.2d 611 (1996).

■   The Arkansas Supreme Court has repeatedly reaffirmed the employment-at-will doctrine and has recognized only limited exceptions to it,

> where there is an agreement that the employment is for a speci-fied time, in which case firing may be only for cause, *or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee.*

*Mertyris v. P.A.M. Transp., Inc.*, 310 Ark. 132, 832 S.W.2d 823 (1992) (quoting *Crain Indus., supra*). (Emphasis added.) The court has further recognized a limited public-policy exception to the at-will doctrine and has held "that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988). How-ever, only the "express provision" exception is at issue in this case.

After review of the documentation relied upon by Ellison, we conclude that Ellison's employment does not fall within the narrow exception to the employment-at-will doctrine recognized by our supreme court in a series of cases in which language con-tained in employee manuals and handbooks was at issue.

In *Gladden v. Arkansas Children's Hosp.*, 292 Ark. 130, 728 S.W.2d 501 (1987), the court upheld judgments in favor of two employers, where the employees contended that they could not be fired without cause because of provisions contained in employ-ment regulations and an employer handbook. However, the court modified the employment-at-will doctrine, stating:

> We do . . . believe that a modification of the at will rule is appro-priate in two respects: where an employee relies upon a person-nel manual that contains an express provision against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co. v. Matthews*, 64 Ark. 398, 42 S.W. 902 (1897), that the at will rule applies even where the employment agreement contains a provi-sion that the employee will not be discharged except for cause, unless it is for a definite term. With those two modifications we reaffirm the at will doctrine.

*Id.* at 136, 728 S.W.2d at 505. The court cautioned, however, that "an implied provision against the right to discharge is not enough." *Id.*

In *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 684 (1991), the court declined to hold that the following language in an employer's handbook created an enforceable promise to discharge only for cause: "[w]e believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees." The court held that it did not rise to the level of an "express provision" as the *Gladden* ruling required.

Finally, in *Crain Indus.*, *supra*, the court affirmed a judgment for employees who had sued for wrongful discharge because their layoffs were not in accordance with a provision contained in their employee handbook. The jury found the following provision to be an express agreement:

> [I]n the event it should become necessary to reduce the number of employees in the workplace, employees will be laid off on a seniority basis.

*Crain Indus.*, 305 Ark. at 568, 810 S.W.2d at 911.

In *Crain Indus.*, the supreme court stated that this handbook provision was a "model of clarity and definiteness" and that there was "no doubt as to its meaning," in holding that "when an employer makes definite statements about what its conduct will be, an employee has a contractual right to expect the employer to perform as promised." Although the employee handbook in *Crain Indus.* had been later changed to include a provision that the handbook was not a contract of employment and the employer could change it at any time, the court did not decide the effectiveness of this disclaimer provision, because there was no evidence that the employees had been notified of the change.

■ When we apply the holdings of *Gladden* and *Crain Indus.* to the evidence submitted by Ellison, we find that it falls short of the requirement that there be an "express provision stating that the employee will only be dismissed for cause." Although the

cardiac monitoring system document sets forth the duties of the monitor technicians with some degree of specificity, it clearly contains no language which can be construed as a promise that termination will be only for cause.

As to the employee handbook, we cannot construe the progressive disciplinary policy as a guarantee that an employee can only be terminated in accordance with the policy, or for a "serious offense," where the same handbook states clearly and unequivocally that the handbook is not a contract, does not confer contractual rights upon employees, and also expressly states that employees are employed at will. Moreover, although a guarantee could perhaps be implied from the existence of the policy, and from its terms, this would be contrary to the supreme court's directive in *Gladden*, that an implied provision against the right to discharge will not be sufficient to invoke the exception.

We also can find no express provision against termination without cause in the document primarily relied upon by Ellison, the twelve-hour-shift agreement. We do not agree with Ellison's contention that the document constitutes a "clear and unambiguous employment agreement" which incorporates by reference other hospital rules and regulations, including the cardiac monitoring system and the employee handbook. This agreement was signed by Ellison in 1986, while she was employed by St. Edward as a patient-service technician, some five years before St. Edward trained her in 1991 to work as a monitor technician. The agreement states that only employees with "good attendance records" will be selected to work a twelve-hour shift, and contains a number of rules which are specific to employees who work that shift, as opposed to an eight-hour shift. The language that Ellison relies upon clearly provides that continued status as a twelve-hour-shift employee is dependent upon compliance with the rules stated in the agreement, and we cannot find even an implied provision against the right to discharge in this language.

As none of the documents relied upon by Ellison contains an express provision that discharge will not be without cause, the trial court erred in denying St. Edward's motion for judgment notwithstanding the verdict.

Reversed and dismissed.

GRIFFEN and CRABTREE, JJ., agree.