HOME MUTUAL FIRE INSURANCE COMPANY *v.*
Charles JONES and Lavonne Jones

CA 97-1457 977 S.W.2d 12

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered October 28, 1998

224

*Smith Law Firm*, by: *Truman H. Smith*, for appellant.

*Donald B. Kendall*, for appellees.

JOHN MAUZY PITTMAN, Judge. Appellant Home Mutual Fire Insurance Company was sued by its insureds, appellees Charles and Lavonne Jones. After a jury trial, appellees were awarded $91,500 in policy proceeds. The trial judge added a 12%

penalty, prejudgment interest, and attorney's fees, pursuant to Ark. Code Ann. § 23-79-208 (Repl. 1992). On appeal, appellant contends that there was no coverage for the loss suffered by appellees, that the trial judge erred in awarding the penalty, interest, and attorney's fees, and that the trial judge erred in instructing the jury. We find no error and affirm.

Appellees were the owners of a poultry farm, part of which was located in Benton County and part of which was located across the Missouri border. In March 1986, they purchased an insurance policy from appellant. The policy insured three poultry houses for $25,000 each, the contents of each poultry house for $5,000 each, and a barn for $1,500. The cover page of the policy stated: "INSURANCE IS PROVIDED AGAINST ONLY THOSE PERILS AND FOR ONLY THOSE COVERAGES INDICATED BELOW BY A PREMIUM CHARGE AND AGAINST OTHER PERILS AND FOR OTHER COVERAGES ONLY WHEN ENDORSED HEREON OR ADDED HERETO." According to the cover sheet, appellees paid a premium for fire and lightning coverage and for "extended coverage," which named the following perils: windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke.

In March 1989, a four-day winter storm struck the northwest portion of the state. The storm began with falling ice, which then changed to snow. The buildup of winter precipitation on the roofs of appellees' structures caused them to collapse. Within a few days after the storm, appellees notified appellant of their loss. Their claim was denied on the ground that they had not purchased "collapse coverage." On February 23, 1994, appellees sued appellant in Benton County Circuit Court. After a jury trial, appellees were awarded $91,500 in policy proceeds, the full amount they had sought in their complaint. Following a posttrial hearing, the trial judge imposed a penalty of $10,980 and awarded prejudgment interest and attorney's fees in the amounts of $43,920 and $36,600, respectively. Appellant filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which was deemed denied upon the passage of thirty days

without a ruling. See Ark. R. App. P.—Civil 4(c). This appeal followed.

Appellant contends first that the trial judge erred in denying its motion for a directed verdict, which was made at the close of all evidence, and in denying its motion for judgment notwithstanding the verdict or, in the alternative, a new trial. It argues that the damage to appellees' property was not caused by a peril named in the policy but by collapse, a peril for which no coverage was provided. Appellant further claims that the loss suffered by appellees was excluded under the policy. Finally, appellant argues that appellees did not offer sufficient proof of the amount of their damages.

██ Appellate review of a denial of a motion for directed verdict or a motion for judgment notwithstanding the verdict entails determining whether the nonmovant's proof was so insubstantial as to require a jury verdict, if entered on his behalf, to be set aside. *St. Edward Mercy Medical Ctr. v. Ellison*, 58 Ark. App. 100, 946 S.W.2d 726 (1997). The same standard of review applies to a denial of a motion for a new trial made on the ground that the jury's verdict was clearly contrary to the preponderance of the evidence. *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); *Scott v. McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988). The question we must answer is whether there was substantial evidence to support the jury's verdict. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond suspicion or conjecture. *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996). On appeal, we will only consider the evidence favorable to the appellee, together with all its reasonable inferences. *St. Edward Mercy Medical Ctr. v. Ellison, supra.*

Appellees contended below that the damage to their property was caused by hail, a named peril in the insurance policy. Appellant's position was that no hail had fallen during the storm and that appellees' loss was caused by ice and snow. Appellant presented the testimony of Dr. John Hehr, a professor at the University of Arkansas and the State Climatologist. Dr. Hehr, relying

on data from the National Climatic Data Center in Asheville, North Carolina, and from cooperative observers from, among other places, the town of Gravette in Benton County, told the jury that an arctic front passed through Tulsa, Oklahoma, at approximately 8:00 p.m., on March 3, and through Fayetteville, Arkansas, at about 12:00 midnight. At Gravette, which is seven to ten minutes from appellees' farm, the cooperative observer measured 2.6 inches of ice on March 4, 3.5 inches of additional ice and snow on March 5, and 8.2 inches of snow after that time. Using these figures, Dr. Hehr estimated that the weight of the accumulation on each of appellees' poultry houses would have been 44.6 tons on March 4[1], 80.6 tons on March 5, and 88.2 tons on March 6. He said he would call the storm an ice storm with a progression of freezing rain to sleet to snow. He noted that there were no reports of hail with the storm. On cross-examination, Dr. Hehr testified that it would have been possible for the ice to destroy appellees' buildings before the snow began. He had already testified that ice weighed more than snow. Further, he acknowledged that precipitation is called hail when it exceeds five millimeters in size. However, he maintained that no hail had fallen during this storm.

According to appellees, the storm began sooner than what was testified to by Dr. Hehr. Charles Jones testified that ice pellets began to fall at his farm on the afternoon of Friday, March 3. The ice fell all that night and the next day. On Sunday morning, March 5, he and Mrs. Jones went to check on the cattle in their barn and found that the barn had collapsed. One cow was killed. Mrs. Jones was dispatched to one of the poultry houses to retrieve some equipment. When she arrived, she heard popping noises and saw that the rafters were breaking. She decided that it would be unsafe to go inside. Mr. Jones then looked at the three poultry houses and determined that they were destroyed. Nearly all the rafters were broken, and the houses looked as if they would fall down at any time. According to Jones, the houses were beyond repair, and the equipment inside the houses was damaged as well.

---

[1] Dr. Hehr originally said 4.6 tons but, later in his testimony, referred to 44.6 tons, which seems to be the more logical figure.

These observations took place before the snow started to fall at noon on Sunday.

Jones testified further that the precipitation that was falling was ice pellets, round in shape, and about the size of an eraser on a No. 2 pencil. Being a mechanic and familiar with the use of calipers, Jones estimated the size of the pellets at about six millimeters. Mrs. Jones's testimony corroborated that of her husband. She testified that she considered the precipitation hail as it was falling and confirmed that, before the snow hit, the buildings and their contents were destroyed. According to Charles Jones, the buildings collapsed completely on Tuesday and Wednesday following the storm.

It was appellees' burden to make a prima facie case that their damages were covered under the insurance policy. *Reynolds v. Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993). The question in this case is whether appellees met their burden by offering sufficient evidence that, under the terms of the policy, they suffered a "direct loss" by hail. A direct loss is one proximately caused by the hazard insured against. *Southall v. Farm Bureau Mut. Ins. Co. of Ark.*, 276 Ark. 58, 632 S.W.2d 420 (1982). The policy in this case does not contain a definition of hail. However, there was evidence at trial that ice pellets in excess of five millimeters are considered hail. According to Charles Jones, the ice pellets he observed exceeded that size. Further, Lavonne Jones said she considered the precipitation hail as it was falling. Although Dr. Hehr testified that no hail was reported, the jury was not bound to accept his testimony and reject that of appellees. A jury is not compelled to believe expert testimony more than that of any other witness. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992). Further, the jury was entitled to believe appellees' account of the weather that occurred within their locality, even though their account may have conflicted with the official weather record. *See Lynch v. Travelers Indem. Co.*, 452 F.2d 1065 (8th Cir. 1972). Finally, we note that, in a similar case, *Southall v. Farm Bureau Mutual Insurance Company of Arkansas, supra*, our supreme court recognized that the term "hail" may include winter precipitation. *See also* 10A *Couch on Insurance 2d* §§ 42:360 and 361 (2d rev. ed. 1982).

■ Based upon the foregoing, we hold that appellees presented substantial evidence that they suffered a direct loss by hail. Having decided that, it is not necessary to discuss appellant's contention that appellees did not purchase collapse coverage. The policy contains no mention of collapse coverage and, in any event, our holding is that a named peril, i.e., hail, could have been considered by the jury to be the cause of the loss.

■ Next, we address appellant's argument that the following exclusion removes appellees' loss from policy coverage: "This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) snow storm, tidal wave, high water or overflow, whether driven by wind or not." Courts are required to strictly interpret exclusions to insurance coverage and to resolve all reasonable doubt in favor of an insured who had no part in the preparation of the contract. *McGarrah v. Southwestern Glass Co.*, 41 Ark. App. 215, 852 S.W.2d 328 (1993). If there is doubt or uncertainty as to the policy's meaning and it is fairly susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Id.* If a reasonable construction may be given to the contract which would justify recovery, it is the duty of the court to do so. *Id.* With these precepts in mind, we hold that coverage is not excluded for appellees' loss in this case. The evidence, as set out above, justifies a finding by the jury that the damage-causing hazard in this case was hail, a named peril. It would be incongruous for an insurer to plainly include a risk only to exclude it a few paragraphs later. *See* 10A *Couch on Insurance 2d* § 42:361, *supra.* Also, it was conceded by Max Leichner, the manager and top underwriter for appellant, that there is nothing in the policy that expressly excludes damage caused by ice. Substantial evidence was presented that the damage done to appellees' property was done before the onset of snow.

■ Appellant argues next that appellees did not prove their damages. When a new trial is sought on the ground of error of assessment in the amount of recovery, a denial of the new-trial motion will be upheld absent a manifest abuse of discretion. *Kempner v. Schulte*, 318 Ark. 433, 885 S.W.2d 892 (1994). We find no abuse of discretion here, as the evidence is plentiful that

appellees were entitled to recover the full amount of the policy proceeds. Appellees testified that the insured structures were destroyed beyond repair. The insurance policy contains the following clause: "In case of a total loss on buildings, this Company will pay the full amount of insurance on building destroyed." Appellant notes that one of its inspectors who visited appellees' property on March 13 stated that one of the poultry houses was still standing. However, that testimony conflicts with that of appellees that all structures were collapsed within a few days of the storm. The weight and value of evidence presented lies within the exclusive province of the jury. *Winchel v. Craig, supra.*

Charles Jones further testified that the contents of the buildings were destroyed. Another witness, Daryl Spillers, the president of Corner Stone Bank, with whom appellees had done business for twenty years, testified that the buildings were worth at least $35,000 each and the equipment in each building, $7,000. Finally, Max Leichner testified several times that, if appellees had had coverage, appellant would have paid them $91,500. Although Leichner qualified that testimony upon examination by his own attorney, stating that he would have adjusted the claim with the insureds, the weight and value of the evidence was for the jury to decide. *Winchel v. Craig, supra.*

 Based upon the foregoing, we find no error in the court's denial of appellant's motion for directed verdict, its motion for judgment notwithstanding the verdict, or its motion for a new trial.

 Next, we address appellant's argument that the trial judge erred in adding a 12% penalty to appellees' recovery. When an insurer such as appellant fails to pay an insured's loss within the time specified in the policy, after demand has been made, the insurer is liable for, in addition to the amount of the loss, 12% damages upon the amount of the loss. Ark. Code Ann. § 23-79-208(a) (Repl. 1992). Appellant argues that, because its decision to decline coverage was made on the basis of a good-faith dispute, no penalty was warranted. It is true, as appellant states, that the statute is directed against unwarranted delaying tactics of insurers. *See State Farm Mut. Automobile Ins. Co. v. Thomas,* 316 Ark. 345, 871

S.W.2d 571 (1994). Nevertheless, when an insurer, after demand, fails to pay for a loss within the time specified in the policy, the penalty is to be added, despite the insurer's purported good faith in contesting coverage. *See Shepherd v. State Auto Property and Casualty Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *Life & Casualty Ins. Co. of Tenn. v. Wiggins*, 224 Ark. 377, 273 S.W.2d 405 (1954); *American Liberty Mut. Ins. Co. v. Washington*, 183 Ark. 497, 36 S.W.2d 963 (1931) (the latter two cases decided under a prior, similar 12% penalty statute). *See also* Howard Brill, *Arkansas Law of Damages* § 24-5 at 420 (3d ed. 1996) ("the Arkansas statute rests on a strict liability theory"), and Paula Casey, *Bad Faith in First Party Insurance Contracts — What's Next?*, 8 UALR L. J. 237, 252 (1985-86).

██ ██ Appellant's challenge to the court's award of pre-judgment interest also fails. The test for awarding prejudgment interest is whether a method exists for fixing an exact value on the cause of action at the time of the occurrence of the event which gives rise to the cause of action. *State Farm Mut. Ins. Co. v. Brown*, 48 Ark. App. 136, 892 S.W.2d 519 (1995). If such a method exists, prejudgment interest should be allowed because one who has use of another's money should be justly required to pay interest from the time it lawfully should have been paid. *Id*. The trial judge in this case computed interest so that it would begin to run on July 17, 1989, giving appellant a sufficient amount of time to investigate the claim. On that date, the amount of loss to appellees was readily calculable. *See generally Metropolitan Property and Liability Ins. Co. v. Stancel*, 16 Ark. App. 91, 697 S.W.2d 923 (1985). In addition to appellees' own testimony that they had suffered a total loss of their property within days of the storm, we also note Max Leichner's testimony that, had appellees had coverage, they would have been paid $91,500.

Appellant argues that, by allowing interest to begin running from July 17, 1989, rather than the date appellees filed their complaint, we are encouraging claimants to delay their lawsuits in order to increase prejudgment interest awards. That argument defies common sense. There is little likelihood that an insurance claimant would purposely delay the filing of his complaint and invite the uncertainties of a jury trial in hope of recovering pre-

judgment interest. Appellees in this case lost their farm due to the failure to receive insurance proceeds. It is inconceivable that they would postpone their lawsuit, which they brought to recover the much-needed proceeds, simply for the purpose of recovering pre-judgment interest.

Appellant argues next that the trial judge erred in awarding $36,600 in attorney's fees, an amount which is 40% of $91,500. The evidence at trial and posttrial showed that appellees, after consulting at least two attorneys and trying to get their case resolved through the Arkansas Insurance Commission, employed attorney Mark Schafer on a 40% contingency-fee basis. Schafer later associated attorney Donald Kendall, who tried the case. Appellees presented to the trial judge an affidavit signed by three northwest Arkansas attorneys who stated that the 40% contin-gency fee was not unusual for this case. Attorney Kendall also submitted time sheets reflecting 120.75 hours of work at the rate of $150 per hour, for a total of $18,112.50.

At a posttrial hearing, the trial judge acknowledged that he was not bound to merely accept the contingency agreement as dispositive of the amount of attorney's fees to be awarded. How-ever, he noted that several factors in the case warranted "a pretty good attorney fee." The judge recognized that the case was diffi-cult and complex; that it was several years old when it was brought to appellees' attorneys; that it had been rejected by other attor-neys; and that there was a low potential for prevailing on the case. In light of those factors, the judge found that the amount of $36,600 was a reasonable fee.

■■ An award of attorney's fees is a matter for the sound discretion of the trial court. *Arkansas Blue Cross and Blue Shield v. Remagen*, 25 Ark. App. 96, 752 S.W.2d 284 (1988). In the absence of an abuse of discretion, the trial court's award will be sustained. *Id.* There is no fixed formula to be used in awarding attorney's fees. *Southall v. Farm Bureau Mut. Ins. Co. of Ark.*, 283 Ark. 335, 676 S.W.2d 228 (1984). In considering the amount of attorney's fees to award, the trial court should consider the experi-ence and ability of the attorney and the time and work required of him, the amount involved in the case and the results obtained, the

fee customarily charged in the locality for similar legal services, and whether the fee is fixed or contingent. *Id.; Arkansas Blue Cross and Blue Shield v. Remagen, supra.*

 In *Southern Farm Bureau Life Insurance Co. v. Cowger,* 295 Ark. 250, 748 S.W.2d 332 (1988), our supreme court recognized that Ark. Code Ann. § 23-79-208 does not contemplate the awarding of a contingent fee against an insurer. In *Cowger,* the insured recovered $100,000 in policy proceeds. The insured's attorney presented documentation of $10,392 in attorney's fees and costs, based upon an hourly rate. However, a $33,000 attorney's fee was awarded. The supreme court upheld the fee, noting that $33,000 was not precisely one-third of the recovery since it did not encompass one-third of the prejudgment interest and penalty awarded. Likewise, in this case, $36,600 does not encompass one-third of the prejudgment interest and penalty received by appellees. Additionally, the supreme court acknowledged that the fee was awarded after a hearing in which the reasonableness of the fee was determined. At the hearing in this case, the trial judge did not simply "rubber stamp" the attorney-client fee agreement but offered reasons for holding that $36,600 was a proper fee. Like the court in *Cowger,* we find no abuse of discretion under such circumstances.

 The final issue in this case concerns the propriety of the following instruction given to the jury by the trial judge:

> A contract of insurance like other contracts must be construed according to the terms which the parties have used and be taken and understood in the absence of ambiguity in their plain, ordinary and popular sense. However, where the terms or words of a policy are of doubtful meaning or have more than one meaning then said provisions of the policy of insurance are construed most strongly against the insurance company that prepared it.

Appellant argues that the instruction was unwarranted because no evidence of ambiguity was presented. The case of *State Farm Fire and Casualty Co. v. Midgett,* 319 Ark. 435, 892 S.W.2d 469 (1995), is cited for its holding that the giving of an instruction suggesting an ambiguity when none is present is reversible error. In the present case, the instruction was proper, if for no other reason than

that an ambiguity existed regarding the applicability of the policy exclusion, as discussed previously herein.[2] A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support the giving of the instruction. *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). A trial court must give a jury instruction if there is some evidence to support it. *Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997). The evidence in this case supported the giving of the instruction, and it is a correct statement of the law that interpretation of an ambiguity in a contract is a matter for the jury. *See Tribble v. Lawrence*, 239 Ark. 1157, 396 S.W.2d 934 (1965).

Affirmed.

ROBBINS, C.J., and ROGERS, STROUD, and ROAF, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse because of the trial court's decision to instruct the jury regarding ambiguity. I agree with appellant that the instruction was not warranted by the evidence. The policy provision that excluded from coverage loss caused "directly or indirectly by (a) frost or cold weather or (b) snow storm, tidal wave, high water or overflow, whether driven by wind or not" is clear, definite, and unconfusing.

Appellees presented proof and argued that their loss resulted from hail, a named peril in their insurance policy. Appellant con-

---

[2] The dissenting judge argues that no ambiguity existed in the insurance policy unless frost, cold weather, and snow storm can reasonably be confused with hail. However, it is apparent that the appellant itself has confused these terms. Appellant argues that the jury's award of damages was erroneous because the evidence did not show that the damage in the case at bar was caused by hail, but instead showed only that the damage was caused by "ice pellets." However, hail is defined as "[p]recipitation in the form of pellets of ice and hard snow." AMERICAN HERITAGE DICTIONARY 587 (2d college ed. 1982); *see also Webster's Third New International Dictionary* 1019 (1976). We think that there was considerable uncertainty about the precise forms of frozen precipitation embraced by the contractual term "hail," and that the ambiguity instruction was properly submitted to the jury.

tended that their loss was caused by ice and snow. Obviously, the policy could not cover loss caused by hail and exclude hail. Unless one reasons that frost, cold weather, snow storm, tidal wave, high water, or overflow can be reasonably confused for hail, it would seem that no ambiguity existed in the policy language to justify the jury instruction.